[S. F. No. 21354.   In Bank.   Feb. 18, 1965.]

Estate of RUTH S. ZOOK, Deceased. ALAN CRANSTON, as State Controller, Petitioner and Respondent, v. EDGAR T. ZOOK, as Executor, etc., Objector and Appellant.

John E. Troxel, Pillsbury, Madison & Sutro, Eugene M. Prince, Noble K. Gregory and James F. Kirkham for Objector and Appellant.

Sabraw & Avera as Amici Curiae on behalf of Objector and Appellant.

Charles J. Barry, Milton D. Harris and R. Edgar Sanderson for Petitioner and Respondent.

PEEK, J.—Edgar T. Zook, executor of the will of Ruth S. Zook, appeals from an order of the superior court which, because certain of decedent's grandchildren had been adopted by their stepfather, fixed the inheritance tax on bequests

to those grandchildren as if such bequests had been made to strangers.

The decedent was survived by five grandchildren, three the children of her daughter Mary and two the children of her son Edgar. Prior to his mother's death Edgar had been divorced, his former wife had remarried, and their two children had been adopted, with Edgar's consent, by his wife's second husband. By her will decedent recognized Edgar's children as her grandchildren, notwithstanding their adoption, and left the same bequests to them as she did to the children of Mary. The controller classified Mary's children as class A transferees for purposes of determining the inheritance tax, but he classified Edgar's children as class D transferees, or strangers.[1] The superior court, after hearing, overruled the executor's objections and fixed the tax on the basis of the controller's classifications.

■ Section 13307, subdivision (a) of the Revenue and Taxation Code clearly provides that those who are "lineal issue" of the decedent are class A transferees for purposes of the inheritance tax. The executor contends simply that Edgar's children, being the children of decedent's son, are decedent's lineal issue. The controller grounds his opposition to this contention in the 1955 amendment to section 257 of the Probate Code, which provides in relevant part that "An adopted child shall be deemed a descendant of one who has adopted him, the same as a natural child, *for all purposes of succession* by, from, or through the adopting parent the same as a natural parent. An adopted child does not *succeed* to the estate of a natural parent when the relationship between them has been severed by adoption . . . nor does such adopted child *succeed* to the estate of a relative of the natural parent. . . ." (Italics added.)

The controller urges that the foregoing section, as amended, operates to broadly redefine the concept of lineal issue as it concerns adoptive relationships to the extent that an adopted child should be considered a class A transferee of its adoptive family and, to prevent advantage in adopted children, a class D transferee of its natural family.

The controller's position requires him to deal with the fact that section 257 is limited by its express terms to matters of

---

[1]The applicable law is found in Rev. & Tax. Code, §§ 13307 to 13310. Class A transferees are entitled to a minimum exemption of $5,000. (Rev. & Tax. Code, § 13801.) Class D transferees are entitled to an exemption of $50. (Rev. & Tax. Code, § 13804.)

*succession.* For this purpose he has recourse to *Estate of Goulart,* 222 Cal.App.2d 808, wherein it was said at page 820 [35 Cal.Rptr. 465] that "the amendment to section 257 was intended to accomplish a complete severance of the former relationship of the adoptee with his natural, or biological, relatives, and to make them no longer 'kindred' in the eyes of the law, and on the other hand, to create a new kinship." In *Goulart* the court was called upon to determine the application of the antilapse statute (Prob. Code, § 92) in an adoptive situation. That statute prevents the lapse of a devise in certain situations where the predeceased devisee is "kindred" to a testatrix. As indicated, the court held that the adoption of the testatrix effectively destroyed the "kindred" relationship between her and her brothers and sisters insofar as the antilapse statute was involved. There was no tax problem before the court in *Goulart.*

Any contention that *Goulart* has expanded section 257 beyond those situations wherein only the succession of decedent's estate is involved necessarily contemplates that the antilapse statute deals not with succession but, instead, testamentary disposition. However, in the sense that the statute directs the disposition of property for which the testator has failed to make adequate provision under the prevailing law, the statute, in effect, does deal with succession. Support for this position is found in *Estate of Pierce,* 32 Cal.2d 265 at page 271 [196 P.2d 1]. On the other hand there is language in *Estate of Esposito,* 57 Cal.App.2d 859 at page 862 [135 P.2d 167], to the effect that a taker by virtue of the antilapse statute takes under the law of wills, not the law of intestate succession. But whatever the nature of the antilapse statute and its effect on the scope of *Goulart,* it is unnecessary that we determine that scope in order to resolve the narrower issue in the instant case, that is, irrespective of any testamentary effect given to section 257 beyond its express language of succession, should it be further construed to be determinative also of inheritance tax consequences in a testamentary situation?

Manifestly it cannot be said that our statutory scheme evinces a legislative intention that there be total correlation between probate law and taxation law. Of course it is elementary that some degree of parallel interpretation is necessary to the development of any cohesive body of law, but the longing for neatness should not be allowed to obscure real distinctions where they exist. Unquestionably the substitution

of adoptive for natural parents serves a great number of social objectives. On the other hand the law should not and cannot ignore the fact that an adopted person may not in many respects be cut off from his natural family. If affection and regard remains between members of a natural family, the law should not in the name of consistency undertake to thwart the expression of those feelings when the encouragement thereof does not hinder the adoptive relationships. Similarly, the partial correlation which now exists between taxation and probate law would seem to demonstrate a recognition that different considerations control in the two areas. An example is afforded by the case of the adoptee who has reached his majority before adoption. Though such a person would be a class A transferee from his adoptive parents if he had been adopted before majority, he is a class D transferee because he was over 21 when adopted. (Rev. & Tax. Code, § 13307, subd. (b).) Therefore, though such a person inherits from his adoptive parents just as a natural child would (Prob. Code, § 257), the transfer is not taxed as that to a natural son, perhaps for the reason that adults might be tempted to utilize adoptions as a part of their tax planning. Thus, where there is sufficient reason, the concept of complete substitution of an adoptee is not necessarily recognized in tax situations.

Other revelant considerations justify forbearance in extending the policy reflected in section 257 into the taxation statutes here involved as to alter the literal meaning of those statutes. Usually, or often, an adoption situation involves the severance, in fact as well as in law, of one set of parental bonds and the replacement thereof by another. The law of intestate succession, in section 257, recognizes this usual attitude. But in a situation where, as here, by will, a testatrix has proclaimed her intention to observe the natural family bonds, the situation may well demand different treatment. This should be particularly true where the testatrix was not a party to the adoption and thus could not be deemed to have voluntarily or constructively severed her natural family bonds with the child. By continuing to bear toward such child the attitude of affection which generally accompanies a specific bequest, the ties between that child and the testatrix cannot be said to have been severed in fact as they have been in law. Surely a distinction here exists sufficient to justify tax treatment as in the absence of adoption where there are no statutory provisions which expressly compel or for good reason require

that the adoption be recognized for inheritance tax purposes. Accordingly, section 13307 of the Revenue and Taxation Code must continue to be read in its literal sense wherein it provides that ''lineal issue'' are class A transferees in the circumstances here prevailing.

The result of this reading of the statute is, of course, that in some circumstances an adopted child may be a class A transferee of both its adopted parents and natural families. The advantage which may thus exist is not unknown in other similar situations. (See *Estate of Rowell*, 132 Cal.App.2d 421 [282 P.2d 163].) Moreover, neither this advantage nor the depletion which the controller fears would seem to outweigh the encouragement which a literal construction of the statute offers to members of the natural family who feel enough affection toward a child adopted by another to include the child in their bounty.

The order appealed from is reversed and the cause remanded for proceedings consistent with the views expressed herein.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

Respondent's petition for a rehearing was denied March 17, 1965.