[Civ. No. 32434.   Second Dist., Div. One.   Nov. 21, 1968.]

Estate of MYRTLE P. COLBY, Deceased. HARVEY T. COLBY, Plaintiff and Appellant, v. HOUSTON I. FLOURNOY, as State Controller, Defendant and Respondent.

McCabe & Houts and Sheldon C. Houts for Plaintiff and Appellant.

Gregory A. Harrison, Theodore R. Meyer and George T. Cronin as Amici Curiae on behalf of Plaintiff and Appellant.

Joseph D. Lear, Walter H. Miller and Phyllis Kelly Fairbanks for Defendant and Respondent.

LILLIE, J.—⬛ On appeal from order overruling the objections of Harvey T. Colby, decedent's executor, to the inheritance tax appraiser's report, the following is the sole issue: For inheritance tax purposes, is the wife of a mutually acknowledged child who, additionally, was adopted when over 21 years of age, the "wife . . . of a son . . . of the decedent" and therefore a class B transferee within the meaning of section 13308, subdivision (b) of the Revenue and Taxation Code?[1] The trial court agreed with respondent Controller that she should not be so classified; it concluded that she should be considered a stranger, or class D transferee (Rev. & Tax. Code, § 13310) who, under the then effective statute, is entitled to an exemption of only $50. (Rev. & Tax. Code, § 13804.) (A class B transferee is given an exemption of $2,000 [Rev. & Tax. Code, § 13802].)

Decedent died testate. By the terms of her will various bequests are made to Harvey T. Colby, referred to as "my stepson," and to Lois M. Colby, described either as Harvey's "wife" or "my daughter-in-law." Such bequests include a cash bequest of $7,000 to be taken "share and share alike, or the survivor" and, in like manner, the residue of all property remaining over; too, Lois is nominated as executrix in the event of Harvey's inability to serve, bond in both instances being waived. Additionally, there is a declaration by decedent that she has "one legally adopted child, HARVEY TODD COLBY," but no mention is made in the will of any mutually acknowledged parental relationship theretofor or then existing nor apparently was any testimony taken to establish such relationship—the appeal has reached this court on a clerk's transcript only.[2]

---

[1]Section 13308. " 'Class B transferee' means any of the following:
"(a) A transferee who is the brother, sister, or descendant of a brother or sister of the decedent.
"(b) A transferee who is the wife or widow of a son, or the husband or widower of a daughter, of the decedent. *For the purposes of this section, 'descendant' includes, although it is not limited to, a child adopted or acknowledged in conformity with the laws of this State.*" (Italics added.)

[2]Such transcript includes the appraiser's report wherein Harvey for the first time is designated as the decedent's mutually acknowledged son,

In reaching its conclusion the trial court adopted the appraiser's report as true and correct, finding that Harvey was "the mutually acknowledged child of the decedent [and] has met the requirements set forth in section 13307(c) of the Revenue and Taxation Code." (Section 13307, subdivision (c) accords class A transferee status to a mutually acknowledged child if the relationship commenced on or before the transferee's 15th birthday and has been in existence for at least ten continuous years prior to the taxable transfer.) The court further found that Harvey was adopted by decedent when he (Harvey) was over the age of 21, but made no finding that such adoption likewise gave Harvey class A transferee status presumably since the governing statute expressly provides that the child must have been under 21 when adopted. (§ 13307, subd. (b).) Finally, it is not disputed, and the court found, that Lois was Harvey's lawful wife at the time of decedent's death.

Although Harvey was concededly over the age of 21 years when adopted, it is nonetheless argued that he was "a child adopted . . . in conformity with the laws of this State" within the meaning of section 13308, subdivision (b) (fn. 1, *supra*), and that Lois, as the "wife of a son," should be accorded a class B status. However, the statute immediately preceding declares that for the purposes there at hand the person adopted "in conformity with the laws of this State" must have been "under the age of 21 years at the time of such adoption." (Rev. & Tax. Code, § 13307, subd. (b)); and in *Estate of Zook*, 62 Cal.2d 492 [42 Cal.Rptr. 597, 399 P.2d 53], such distinguishing proviso is given judicial sanction for tax purposes. "The code specifically prescribes different tax treatment, in inheritance from the adoptive parent, of one adopted as an adult and one adopted during minority (Rev. & Tax. Code, § 13307), and the distinction is approved by the Supreme Court (*Estate of Zook, supra,* at p. 495)." (*Estate of Goulart,* 242 Cal.App.2d 811, 814 [51 Cal.Rptr. 808].) According to the Controller, the *Goulart* case is also dispositive of appellant's claim that an adopted child is deemed a descendant of the adopting parent, the same as a natural child, "for all purposes of succession." (Prob. Code, § 257.) Said *Goulart* in that regard: "The Legislature has tended to recognize an adoptee as a lineal descendant for tax purposes, but has not, in its tax enactments, embraced the 'total substitution' theory of Probate Code section 257 in preference to

which designation precipitated the objections thereto involving his wife's transferee status.

the 'parental substitution' view previously followed in California (see 18 Stan.L.Rev. 494, at pp. 495-499)." (*Supra*, p. 814.) The above conclusion necessarily follows from the holding in *Zook* that "where there is sufficient reason, the concept of complete substitution of an adoptee is not necessarily recognized in tax situations," (p. 495) one such reason suggested by the court being the temptation afforded adults "to utilize adoptions as a part of their tax planning." (*Supra*, p. 495.) The observations just quoted are preceded by the following statements which envision, almost prophetically, the situation here at hand : "An example is afforded by the case of the adoptee who has reached his majority before adoption. Though such a person would be a class A transferee from his adoptive parents if he had been adopted before majority, he is a class D transferee because he was over 21 when adopted. (Rev. & Tax. Code, § 13307, subd. (b).)" (P. 495.)

In view of the above, and as urged by the Controller, if Harvey was a class D, and not a class A, transferee, how can he properly claim class B status for his wife? He endeavors to do so by invoking the approach adopted by the court in *Zook* in which case it was determined that the term "lineal issue" of decedent, as found in section 13307, subdivision (a), Revenue and Taxation Code, may be applied in a given situation to natural grandchildren subsequently adopted in conformity with California law. Curiously enough, in that case the controller relied on section 257 (Prob. Code) which is now said by him to be inapplicable here. The court pointed out that since such statute by its very language relates to intestate succession, it did not apply to testamentary bequests made by the testatrix-grandmother ; that she was not a party to the adoption which involved her natural son, the son's divorced wife and the wife's second husband ; that she continued to bear toward her grandchildren the measure of affection inherent in the specific bequests by her made and, therefore, "the ties between [them] and the testatrix cannot be said to have been severed in fact as they have been in law." (P. 495.) In the case at bar, says Harvey, there are similar close bonds which, under the finding of acknowledged parental relationship, had existed for at least ten continuous years prior to the transfer ; that, as in *Zook*, decedent demonstrated her affection for the parties concerned by a specific bequest which, unlike *Zook*, number more than one and go to her "step-son" and "daughter-in-law" respectively ; that Harvey is named executor to serve without bond, while his wife is named execu-

trix, in case of Harvey's inability to serve, likewise without bond.

Due weight being given to the above, it is important to note the added reason for the result reached in *Zook* which is not here present. It was determined (pp. 495-496) that "there are no statutory provisions which expressly compel or for good reason require" a different tax determination than was there made. The court was there concerned with subdivision (a) of section 13307, Revenue and Taxation Code, which contains no qualifying language akin to that found in subdivision (b) and commencing with the word "provided"—"provided such child was under the age of 21 years at the time of such adoption." Such word has been judicially defined as synonymous with "but" and "except" (*Estate of Naftzger,* 24 Cal.2d 595 [150 P.2d 873]), and the cited case notes that when "but" is used, it "indicates that what follows is an exception to that which has gone before, and that, therefore, what is said before the word does not control that which follows it. . . ." (P. 599.) Such exception, in our opinion, constitutes the expressly compelling statutory provisions which the court could not find in *Zook.* In addition, we have the comment in *Zook,* seemingly tailormade for the situation at bar, that a child adopted after majority does not qualify as a class A transferee; we do not mean to infer that the interested parties here were concerned with "tax planning," but the Supreme Court has determined that the possibility thereof is good and sufficient reason for the distinction enacted by the Legislature.

We conclude, therefore, that Lois does not qualify as a class B transferee since she is the wife of a child adopted after reaching majority and entitled, accordingly, to only class D status.

The same argument is advanced by appellant in support of his claim that Lois should be given class B classification as the wife of a mutually acknowledged child; thus, not only, as the trial court found, did Harvey meet the statutory requirements that the relationship continue for 10 years prior to the transfer and that it be commenced before his 15th birthday, but the provisions of decedent's will afford further proof of the close ties between the testatrix and *both* Harvey and Lois and demonstrate her affection for each. The difficulty with such argument, which seeks to apply the rationale of *Zook,* is that in the cited case there was a statute giving "lineal issue" the favored classification sought; and the court, for the reasons already mentioned, construed such language to include the

grandchildren in suit. In our case, however, there is no statute providing preferential treatment for the wife of an acknowledged son unless she is entitled thereto under the provisions of section 13308, subdivision (b), Revenue and Taxation Code, as "the wife . . . of a son . . . of the decedent." But subdivision (a) of the same statute gives class B status to a "brother, sister, or descendant of a brother or sister of the decedent," and a 1959 amendment adds the following language: "For the purposes of this section, '*descendant*' includes, although it is not limited to, a child *adopted* or *acknowledged* in conformity with the laws of this State." (Italics added.) By the use of such terminology, it seems clear that the Legislature had reference to subdivision (a) only which includes in class B a descendant of the brother or sister of the decedent; it does not specifically extend to the wife of a child acknowledged. The same construction was given to section 13309, containing similar language, in *Estate of Goulart, supra,* 242 Cal.App.2d 811, 813-814.

Finally, while there is no California case law relating to the precise problem at bar, in an Illinois decision (*First Nat. Bank of Chicago* v. *People,* 412 Ill. 29 [104 N.E.2d 630]) the court held that a bequest to the widow of an acknowledged child should be taxed at the rate provided for a legacy to a stranger. The Illinois statute, as is California's, is taken from a former New York statute (see *Estate of Teddy,* 214 Cal. App.2d 113, 116-117 [29 Cal.Rptr. 402]); its interpretation by the highest court of that state is accordingly here relevant. At pages 632-633 the following is found: "Because the widow of an adopted son is treated by the statute like the widow of a son, it does not follow that the widow of an acknowledged son must also be so treated. The law recognizes many distinctions between the relationship of legal adoption and an acknowledged relationship. . . ."

For all of the foregoing reasons it must be concluded that the determinations below were correctly reached.

The order is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied December 16, 1968, and appellant's petition for a hearing by the Supreme Court was denied January 15, 1969.