[Civ. No. 36354. Second Dist., Div. Five. Feb. 5, 1971.]

Estate of DOROTHY H. COTTRELL, Deceased.
HOUSTON I. FLOURNOY, as State Controller,
Petitioner and Appellant, v.
ARTHUR L. ERB, as Executor, etc., Objector and Respondent.

## COUNSEL

Myron Siedorf, Walter H. Miller and Margaret Groscup for Petitioner and Appellant.

Gibson, Dunn & Crutcher, John T. Pigott and William Stinehart, Jr., for Objector and Respondent.

## OPINION

**KAUS, P. J.**—The State Controller appeals from an order of the superior court which, in spite of the fact that decedent's daughter had been adopted by decedent's parents, fixed the inheritance tax on a bequest to the adopted daughter as if such bequest had been made to a lineal descendant. He claims the daughter is a "stranger."[1]

The case was tried and submitted to the superior court on an agreed statement. The significant facts are as follows:

The decedent, Dorothy H. Cottrell and her husband, George Cottrell had a legitimate child, Sally Hunter Cottrell born on October 5, 1919. In the best interests of their daughter, because of her parents' divorce, Sally was adopted by the decedent's parents, Sara Ford Hunter and Joseph H. Hunter on September 7, 1923. She was thereafter known as Sally Hunter.

Sally Hunter's natural parents were again married on June 7, 1948, and remained married until the decedent's death.

---

[1]Former Revenue and Taxation Code, section 13310. At the time of decedent's death, transferees who were not relatives of the decedent were known as class D transferees. The parties are in no mood to compromise on the basis that Sally is at least her mother's sister and, therefore, a class B transferee.

In 1951 Sarah Ford Hunter, Sally Hunter's natural grandmother and adoptive mother, filed a California gift tax return in which Sally was described as an adopted child. The gift was taxed at rates applicable to class A donee.

Some months later Joseph H. Hunter on August 25, 1962, died intestate and Sally properly received a one-third share of the estate. This share was taxed as passing to a class A transferee. Sarah Ford Hunter died testate soon thereafter, specifically leaving nothing to Sally.

Dorothy Hunter Cottrell, Sally's natural mother, died on May 28, 1966. The second paragraph of her will reads as follows:

"SECOND: I declare that I am married and that my husband's name is GEORGE W. COTTRELL. I have no children or any living issue of any deceased child."

After leaving a series of bequests to various friends, the decedent directed that the residue of her estate be distributed in trust in the following manner: (a) income for life to her husband George Cottrell, his interest being valued in the report of the inheritance tax appraiser at $602,461.76; (b) after George's death, income for life to Sally Hunter, described in the will as the "adopted daughter of my deceased mother," her interest being valued in the report at $1,223,491.95; and (c) remainder in equal shares to Damon Runyon Cancer Fund and the American Cancer Society, their interests being valued at $775,835.33 each.

■ The trial court, in its findings of fact and conclusions of law, in addition to the above, found that "Sally Hunter is the lineal issue of decedent Dorothy Hunter Cottrell." The court went on to hold that as "lineal issue of decedent," Sally's interest should be taxed, pursuant to section 13307 of the Revenue and Taxation Code, as if she were a class A transferee. The tax therefore, amounted to $109,449.60 instead of $268,-884.03, the tax on a bequest to a class D transferee. By so holding the court sustained the respondent's objection to the appraiser's inheritance tax report which had determined Sally to be a "stranger" or class D transferee.

The trial court based its holding on *Estate of Zook,* 62 Cal.2d 492 [42 Cal.Rptr. 597, 399 P.2d 53], where the decedent had two children, Mary and Edgar. Edgar, in turn, had two children and Mary was the mother of three. Edgar had been divorced, his former wife remarried, and their two children had been adopted, with Edgar's consent, by his former wife's second husband. By her will the decedent left equal bequests to her five grandchildren. The Controller classified Mary's children as class A trans-

ferees, but put Edgar's into class D. The Supreme Court treated all five grandchildren as class A transferees.

The Controller in *Zook* contended that section 257 of the Probate Code[2] "operates to broadly redefine the concept of lineal issue as its concerns adoptive relationships" so that an adopted child should be considered a class A transferee of his adoptive family and "to prevent advantage in adopted children, a class D transferee of his natural family."

The court's answer to this contention is found at page 494 of its opinion: "Manifestly it cannot be said that our statutory scheme evinces a legislative intention that there be total correlation between probate law and taxation law. Of course it is elementary that some degree of parallel interpretation is necessary to the development of any cohesive body of law, but the longing for neatness should not be allowed to obscure real distinctions where they exist."

In arriving at this conclusion the *Zook* court distinguished *Estate of Goulart,* 222 Cal.App.2d 808 [35 Cal.Rptr. 465], "wherein it was said at page 820 [35 Cal.Rptr. 465] that 'the amendment to section 257 was intended to accomplish a complete severance of the former relationship of the adoptee with his natural, or biological, relatives, and to make them no longer "kindred" in the eyes of the law, and on the other hand, to create a new kinship.' . . . There was no tax problem before the court in *Goulart.*" (*Estate of Zook,* 62 Cal.2d at p. 494 [42 Cal.Rptr. 597, 399 P.2d 53].)

The only possible distinction between this case and *Zook* is this: in *Zook* the grandmother had no voice in the adoption of the grandchild. Here the decedent consented thereto. With this difference in mind, the Controller points to the emphasized language in a passage from *Zook:* "Other relevant considerations justify forbearance in extending the policy reflected in section 257 into the taxation statutes here involved as to alter the literal meaning of those statutes. Usually, or often, an adoption situation involves the severance, in fact as well as in law, of one set of parental bonds and the replacement thereof by another. The law of intestate succession, in section 257, recognizes this usual attitude. But in a situation where, as here, by will, a testatrix has proclaimed her intention to observe the natural family bonds, the situation may well demand different treatment. *This should be*

---

[2]"An adopted child shall be deemed a descendant of one who has adopted him, the same as a natural child, for all purposes of succession by, from or through the adopting parent the same as a natural parent. An adopted child does not succeed to the estate of a natural parent when the relationship between them has been severed by adoption, nor does such natural parent succeed to the estate of such adopted child, nor does such adopted child succeed to the estate of a relative of the natural parent, nor does any relative of the natural parent succeed to the estate of an adopted child."

*particularly true where the testatrix was not a party to the adoption and thus could not be deemed to have voluntarily or constructively severed her natural family bonds with the child.* By continuing to bear toward such child the attitude of affection which generally accompanies a specific bequest, the ties between that child and the testatrix cannot be said to have been severed in fact as they have been in law." (*Estate of Zook,* 62 Cal.2d at p. 495 [42 Cal.Rptr. 597, 399 P.2d 53]. Italics added.)

We are unable to read quite as much into this passage as the Controller would have us do. The theme of *Zook* is that the law of intestate succession is one thing, the inheritance tax law another. The latter takes cognizance of the possibility of adoption by specifically providing for the class of transferee into which adopted children are to be put with respect to inheritances from the adoptive parent. However, it makes no special exceptions from the class A status for lineal issue which the decedent has permitted to be adopted. The Supreme Court tells us that the statute is to be literally construed.[3] Were we to follow the Controller's suggestion, we would have to read subdivision (a) of section 13307 as follows: "A transferee who is the husband, wife, lineal ancestor, or lineal issue of the decedent, *provided the transferee is not a child of the decedent to whose adoption decedent has consented.*" (Italics added.) The emphasized language, of course, does not appear in the statute.[4] Clearly the language in *Zook* which points to the fact that the grandmother had not been a party to the adoption was only intended to buttress the court's point that the natural family bonds between her and the adopted grandchild had not been severed. More important than the grandmother's lack of involvement in the adoption proceedings was the very fact that a specific bequest in favor of the grandchildren had been made. The Controller argues that in the case at bar, since decedent left Sally only a life income after decedent's husband's death, the bequest indicates that decedent did not harbor "the normal feelings of a mother toward her only child." Frankly, no member of this court is prepared to say

[3]"The result of this reading of the statute is, of course, that in some circumstances an adopted child may be a class A transferee of both its adopted parents, and natural families. The advantage which may thus exist is not unknown in other similar situations. (See *Estate of Rowell,* 132 Cal.App.2d 421 [282 P.2d 163].) Moreover, neither this advantage nor the depletion which the controller fears would seem to outweigh the encouragement which a *literal construction* of the statute offers to members of the natural family who feel enough affection toward a child adopted by another to include the child in their bounty." (*Estate of Zook,* 62 Cal.2d at p. 496 [42 Cal.Rptr. 597, 399 P.2d 53]. Italics added.)

[4]This also disposes of the Controller's point, that exemption and rate statutes are to be strictly construed against the taxpayer. We do not read the authorities to support the suggestion that the courts should write provisos into such statutes, which the Legislature has seen fit to omit.

that a bequest worth nearly one and one-quarter million dollars indicates a lack of feeling.

Reversing the last argument, the Controller urges "it is not good law to measure the impact of a tax by degree of affection of the testatrix to the legatee so that for instance she is taxed as a child if the testatrix had left her a $1,000,000, but as a stranger if left only a $1,000 out of a $1,000,-000." This, as the previous argument, puts the cart before the horse in assuming that *Zook* stands for the proposition that the courts will measure the quality of the remaining natural family bond by the generosity of the bequest. "The attitude of affection," referred to in *Zook*, "which generally accompanies a specific bequest" must be assumed from the mere making of the bequest, not its size in relation to the estate's assets.

The Controller also claims that the trial court's order is as "illogical as if it had recognized an ex-husband as a husband for tax purposes, when a testatrix had divorced him for abundant cause but retained sufficient residuary affection to leave him a bequest." The trouble is that the statute says nothing about ex-husbands but does speak of lineal issue.

We are also referred to the fact that in the will decedent described Sally as the "adopted daughter of my deceased mother." We fail to see the legal significance of this accurate description in the context of this controversy. Would the result in *Zook* have been different had the grandchildren been described as "the adopted children of my former daughter-in-law's second husband"?

The fact that Sally was properly classified as a class A transferee with respect to the gift from her adoptive mother and the inheritance from her adoptive father, cannot affect the correctness of the trial court's determination in the case at bar. Sally would have been "lineal issue" of her grandparents, regardless of the adoption and, in any event, the possibility of adoptive children being class A transferees with respect to both the adoptive and natural parents was foreseen and deemed of no consequence in *Zook*. (See fn. 3, *ante*.)

The Controller's last point is that section 13310 of the Revenue and Taxation Code,[5] added by the 1969 Legislature, clarifies, rather than changes, preexisting law. Unquestionably the 1969 amendment nullifies *Zook* in cases to which it applies. The Controller does not contend that it is

---

[5]Section 13310 reads in relevant part: "In determining the classification of a transferee of any class for the purposes of this part, children adopted in conformity with the laws of this state while under the age of 21 years are deemed to be natural children of their adoptive parents and to be unrelated to any natural parent who has been replaced by the adoption. . . ."

retroactive. He does claim that it indicates that the Legislature believes that *Zook* was a misinterpretation of the applicable statutes then in force. The presumption, of course, is the other way. (*Estate of Broad,* 20 Cal.2d 612, 617-618 [128 P.2d 1].) The Legislature knows how to make it clear that a new statute is clarifying only. (*Gibbons & Reed Co.* v. *Dept. of Motor Vehicles,* 220 Cal.App.2d 277, 287-289 [33 Cal.Rptr. 688, 927]), even if the attempt is not always successful. (See, for example, *Learner Co.* v. *County of Alameda,* 234 Cal.App.2d 278, 284 [44 Cal.Rptr. 535].)

We are aware of the fact that in *Estate of Rowell,* 132 Cal.App.2d 421, 430-433 [282 P.2d 163], the court held that an amendment to section 13307 of the Revenue and Taxation Code which specifically provided that adopted children of any "lineal issue or child" were class A transferees, clarified, rather than changed the law. The distinction between *Rowell* and the present situation is this: the new statute involved in *Rowell* was not enacted in response to a decision which apparently displeased the Legislature. Here it would be rather strange if the Legislature, presumably knowing the Supreme Court's interpretation of prior law in *Zook* and—as the Controller suggests—believing it to be a misinterpretation, said nothing about it and left it to the vagaries of judicial construction to enforce its former intent.

The order appealed from is affirmed.

Aiso, J., and Reppy, J., concurred.

A petition for a rehearing was denied February 17, 1971, and appellant's petition for a hearing by the Supreme Court was denied March 31, 1971.