[Civ. No. 37837. Second Dist., Div. Three. Oct. 27, 1971.]

Estate of MARIE LOUISE DE ROULET, Deceased.
HOUSTON I. FLOURNOY, as State Controller, etc.,
Petitioner and Appellant, v.
HENRY DE ROULET, as Executor, etc., Objector and Respondent.

**COUNSEL**

Myron Siedorf, Walter H. Miller and John H. Van Veen for Petitioner and Appellant.

Burr, Smith & Adair and Philip Grey Smith for Objector and Respondent.

**OPINION**

**COBEY, Acting P. J.—**

The sole question on this appeal by the Controller from an order fixing the inheritance tax in the above estate is whether on the date of decedent's death, November 12, 1964, Vincent de Roulet, a mutually recognized grandchild of decedent, was under the Inheritance Tax Law properly classified as a Class A (close relative) or a Class D (stranger) transferee of decedent, Marie Louise de Roulet. The trial court found that Vincent was a person adopted as a minor by Henry de Roulet, his stepfather and the only child of decedent, and therefore concluded that Vincent was a Class A transferee of decedent under Revenue and Taxation Code section 13307, subdivision (e) of the law.[1]

Subdivision (e) in 1964 read as follows: "A transferee whose relation-

---

[1]All section references will be to the Revenue and Taxation Code, unless otherwise indicated.

ship to the decedent is that of a person adopted in conformity with the laws of this State by any lineal issue or child mentioned in this section; provided, such person was under the age of 21 years at the time of such adoption."

The trial court further found that Henry and Vincent had the mutually acknowledged relationship of parent and child for more than 10 years prior to November 12, 1964, and that the relationship commenced before Vincent's 15th birthday.[2] Under subdivision (c) of section 13307, a Class A transferee includes "A transferee to whom the decedent for not less than 10 continuous years prior to the transfer stood in the mutually acknowledged relationship of a parent, if the relationship commenced on or before the transferee's fifteenth birthday."

In short for rate and exemption purposes under the Inheritance Tax Law (see §§ 13404, 13407, 13801, 13804) the trial court treated Vincent, a mutually acknowledged child of Henry, as if he had been a child adopted by Henry and so classified him. Vincent is referred to in decedent's will as her "grandson" and in the document she divided the residue of her estate, after deduction of, among other things, death taxes, equally between Vincent and his half sister, the natural daughter of Henry and Vincent's mother and the natural granddaughter of decedent. Decedent lived but a few blocks from the family home of Vincent and his sister and a relationship of love and affection existed between decedent and Vincent from the time he was four years old in October 1929 until her death in November 1964. When Vincent reached the age of 21 his family name was legally changed to that of decedent—a name he had chosen upon his confirmation in the Roman Catholic Church some seven years earlier.

In 1964, so far as descendants of a decedent were concerned, Class A transferees under section 13307 were limited to: (a) lineal issue of decedent, (b) a child adopted as a minor by decedent, (c) a mutually acknowledged child of decedent if this relationship had lasted for not less than 10 continuous years and had commenced on or before the child's 15th birthday, (d) the lineal issue of adopted or mutually acknowledged children of decedent, (e) a child adopted as a minor by lineal issue, an adopted child or a mutually acknowledged child of decedent, or by lineal issue of such children.

Vincent's problem is that, as a recognized grandchild of decedent, he does not fit into any of these pigeon holes. He is the mutually acknowledged child of decedent's only lineal issue, Henry. If he were the adopted child

---

[2] The mutually acknowledged relationship of parent and child between Henry and Vincent actually began in 1929 and has lasted essentially ever since.

of decedent's lineal issue or the lineal issue of either an adopted child or a mutually acknowledged child of decedent, his Class A status under section 13307, subdivision (e) would be clear. In other words, his relationship to his "grandmother" could be entirely adoptive or partially adoptive and partially mutually acknowledged and yet he would qualify as a Class A transferee. In these situations he would have no blood relationship to decedent. Here, Vincent, though having no blood relationship to decedent, was apparently treated by her during her life as her grandson and on her death by means of her will she divided the residue of her estate, after death taxes, etc. equally between Vincent and her only natural grandchild, his half sister.

Furthermore, the denial of Class A status to Vincent will result in a reduction of the residuary estate in the amount of $21,362.88, and Vincent's half sister, concededly a Class A transferee, will be penalized equally with Vincent.

Under these circumstances we are most reluctant to deny Vincent the Class A status that his grandmother figuratively accorded him during her life and in her will. As we see it, however, we have no choice in the matter. Section 13307 is clear and unambiguous. The only lineal descendants of a decedent who are accorded Class A status are lineal issue, adopted or mutually acknowledged children of a decedent, and the natural and adopted issue of such children. A person, such as Vincent, recognized by decedent as her grandson in life and in her will, is not included as a Class A transferee as an adopted child of decedent's only lineal issue, Henry, even though he is the mutually acknowledged son of Henry and even though his family name was changed to that of decedent after he reached his majority.

Our conclusion accords with the only decision that we have been able to find on much the same question. We refer to *In re Gay's Estate* (1945) 310 Mich. 226 [17 N.W.2d 163, 163-65], where under a comparable statutory classification persons recognized as grandchildren by a decedent were denied such inheritance tax classification since they were neither mutually acknowledged children of decedent nor lineal descendants of decedent. Moreover in both *Estate of Teddy,* 214 Cal.App.2d 113 [29 Cal. Rptr. 402] (hg. den.) and *Estate of Colby,*[3] 267 Cal.App.2d 524 [73 Cal. Rptr. 344] (hg. den.) a similarly strict and literal construction was given to the requirements for Class A classification under section 13307, subdi-

---

[3] In *Colby* the wife of a mutually acknowledged son of decedent, who had been adopted by her as an adult, was denied Class B status although decedent in her will referred to the wife as "my daughter-in-law," provided for the wife generously in her will and nominated the wife as substitute personal representative if the wife's husband was unable to serve. (267 Cal.App.2d 524, 525.)

vision (c) and for Class B classification under section 13308, subdivision (b).

Vincent's position that the mutually acknowledged relationship between himself and his stepfather of long duration together with the change of his family name to de Roulet after he became 21 made him "a person adopted in conformity with the laws of this State by any lineal issue . . . [of decedent]" is untenable. In this state formal adoptions are normally made only by means of a statutory proceeding for this purpose.[4] (See Civ. Code, §§ 221-229.) Adoptions are wholly statutory. (*Estate of Taggart,* 190 Cal. 493, 498 [213 P. 504, 27 A.L.R. 1360].) Furthermore Class A status via the mutual acknowledgment route (§ 13307, subd. (c)) is available only where the parent involved is the decedent. It is not available otherwise.

There are no decisions of our Supreme Court in conflict with the approach we have taken here. It is true that in *Estate of Radovich,* 48 Cal.2d 116 [308 P.2d 14], the court upheld Class A status for one who was only equitably adopted, but this result was reached by according finality as against the Controller to an heirship decree so adjudicating. Similarly in *Estate of Zook,* 62 Cal.2d 492 [42 Cal.Rptr. 597, 399 P.2d 53], the court accorded Class A status to an adopted child taking by will from his natural family, but this was done on the rationale that Probate Code section 257 governs only intestate succession.

There are, however, two decisions of our court which have taken a more liberal approach. In *Estate of Morris,* 56 Cal.App.2d 715 [133 P.2d 452] (hg. den.), an adoptive parent was granted Class A status despite the absence of any language in the statute justifying this conclusion. Likewise, in *Estate of Rowell,* 132 Cal.App.2d 421 [282 P.2d 163] (hg. den.) a 1953 amendment to section 13307 was given effect in 1951 by means of an exceedingly liberal and somewhat illogical construction of the section.

Nevertheless it is our position that section 13307 must be strictly construed. It defines a classification for exemption and rate purposes and therefore, notwithstanding the *Morris* view to the contrary (56 Cal.App. 2d 715, 727), it must be strictly construed in favor of the state and against the taxpayer. (See *Estate of Steehler,* 195 Cal. 386, 396 [233 P. 972]; *Kirkwood* v. *Bank of America,* 43 Cal.2d 333, 341 [273 P.2d 532];

---

[4]Pursuant to Civil Code section 230, an illegitimate child may be adopted by his natural father by public acknowledgment of the relationship, etc. Vincent is not, however, an illegitimate child; he is the issue of his mother's first marriage and Henry is not Vincent's natural father.

*Cedars of Lebanon Hosp.* v. *County of L.A.,* 35 Cal.2d 729, 734 [221 P.2d 31, 15 A.L.R.2d 1045].)

The order under appeal is reversed for redetermination of the inheritance tax in accordance with the views expressed in this opinion.

Schweitzer, J., and Allport, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 23, 1971.