Millard L. Midonick, S.
This proceeding is brought upon a petition by stepfather, with consent of his wife the natural mother, for the adoption of the minor child of the respondent natural father. The child was born on October 26, 1968, in *106 wedlock, to the respondent natural father and to the mother who has since divorced the natural father and remarried the petitioner. The respondent appeared for the hearing with his lawyer, and objected to the adoption.
The petitioning stepfather and the natural mother contend that the consent of the natural father should be dispensed with on the ground that he has abandoned the child under the principles set forth in section 111 of the Domestic Relations Law and paragraph (c) of subdivision 2 of section 371 of the Social Services Law.
Section 111 of the Domestic Relations Law provides that: “ consent [to adoption] shall not be required of a parent who has abandoned the child ”. Section 371 of the Social Services Law defines an ‘1 abandoned child ” as:
“2. * * * a child who is abandoned * # # by any # * * person * * * lawfully charged with its care * * * and left * * *
“ (c) without being visited or having payments made toward his support, for a period of at least six months, by his parent, guardian or other lawful custodian without good reason ”.
Usually commitment proceedings for a finding of abandonment are separate from adoption proceedings, but the issues can be tried together in an adoption proceeding if all interested parties are properly in the same county before the same court and if all adult parties know one another so that the veil of secrecy between the natural and adoptive parents is impossible to preserve. (Matter of Anonymous, 13 Misc 2d 653; Matter of Anonymous, 71 Misc 2d 448.)
The separation agreement between the natural parents provides for support of this child by the natural father at the rate of1 $150 per month, and for an increase to $175 per month upon the remarriage of the mother. It provides also for “ reasonable ” visitation rights on the part of the father. The subsequent divorce decree granted in February of 1972 did not make any reference to this child who is the only issue of the marriage.
The Patural father in this proceeding failed to visit his child for a period of more than two years from about the tipie of his ex-wife’s remarriage to the petitioner in February, 1972 until the present time. Except for a single monthly payment of1 $175 in May of 1972, the father ceased all support.
The respondent’s testimony by way of affirmative defense to explain his lack of parental contact or support for his daughter, now aged 5%, consisted of several factors which he claims to be good reason for his conduct. To excuse his failure *107 to make support payments, he cites his difficulty in earning a living as a teacher, his lack of any income for more than a year in an effort to start a new business, and his scanty earnings even now. He gives as a reason for his failure to exercise his right of visitation the lack of any provision in the separation agreement preventing the mother from removing the child from the city where the marital home had been, which resulted in the placing of considerable distance between the child’s home and the father’s. He testified that he feared court proceedings to enforce support if he were to visit his child.
Further as a reason for his failure to visit this child, the respondent testified that the natural mother persuaded him that during the transitional period of divorce and remarriage, the child might be confused by the continued visitation of a father. The natural father noticed that the child seemed to be showing signs of emotional distress in the form of asthma, and he therefore decided to abide by the request of the mother to stay away from the child temporarily. This temporary disappearance from the life of the child has now lengthened into a two-year void. The respondent natural father did telephone two or three times to the mother to inquire about his daughter and in order to speak to his daughter, ¡but the mother made excuses to avoid any telephone contact between father and daughter.
The petitioning stepfather has provided support for the child since his marriage to the mother. The child calls her stepfather “Daddy”. The testimony indicates that the child has not spoken of or been spoken to about her natural father for more than two years, and appears to have forgotten him.
The child involved here has obviously acquired what amounts to a de facto or “ common-law ” father whom she regards psychologically as her true father. This stepfather now wishes to adopt this child legally. Without the consent of the natural father, the mother and stepfather have entered this child in school under the name of the stepfather. Moreover, this child has acquired a baby half sister within the remarriage of her mother with the stepfather.
■The father has also remarried and he, with his present wife’s concurrence, indicates a strong desire to resume contact with his child. Indeed, at one point during the hearing, counsel for the respondent natural father suggested that this adoption proceeding be recessed for eight or nine months to allow the natural father and his child to build a new relationship with each other by visitation.
*108 I declined to recess the decision of this court for any substantial period of time; it would unsettle the petitioner and the natural mother who are the custodial parents; it would unsettle the natural father, and worst of all, may very well unsettle the child by the uncertainty continuing over many months.
Upon all the evidence, the court finds that the petitioner has sustained the burden of proof as to abandonment, and that the moral and temporal interests of the infant will be promoted by approving the adoption.
Late in 1973, the petitioner and the natural mother wrote a joint letter to the respondent natural father suggesting that an adoption be consented to, and as an inducement, suggesting further that future support would be eliminated and that arrears of support would be canceled. Further in this letter, the petitioner and mother suggested that rights of visitation would be provided to the natural father even after such adoption would sever his legal status as a father.
It is the court’s further finding that all of the adults in this particular case are congenial, not unfit to be parents of this child but for the abandonment, that they all desire what is best for the child, and will do their utmost not to confuse or disturb the child. For this reason, and under these special circumstances, the resolution of this matter would seem to require a somewhat novel approach.
Upon reflection, the court consulted with tooth attorneys indicating that adoption would probably be approved, and suggested a resolution which might satisfy all adult parties and be for the best interest of the child as well. The attorneys have consulted with their clients and are in agreement with the court’s further views set forth below.
The petition for adoption is therefore granted over the objection of the natural father and the usual consequences shall follow including the change of name of the child officially with a new birth certificate, indicating that her natural mother and her stepfather are her parents formally and finally.
Under the unusual circumstances in this case, including the finding of fitness of both families, and based upon the fact that the natural mother and adoptive father consent to limited visitation and believe it to be in the interest of the child, this court will include in its order of adoption provision for reasonable visitation as requested by the parties. Such visitation shall be at reasonable times on two weeks’ notice to the natural mother and the adopting father limited to bimonthly occasions, Since this young child does not remember her natural father at this *109 time, for the first few visits it would be-necessary for one of her custodial parents to be present during visitation. When the time comes that the child will be comfortable and at ease with the natural father, the natural mother can consent to daytime visits without her supervision. After the passage of many months, if the natural mother consents, because of observation and conclusion that the child will not be disturbed by the-prospeet, she or the adopting father may consent to weekend visits, but unless such consent be given the child shall be returned to her own home each night. If the child becomes sufficiently close to her natural father in perhaps a year’s time, the natural mother and the adopting father may consent to a vacation with the natural father, or whatever plan seems best. If there is any difference between the parties, this court will be available for a hearing to resolve the differences based upon any change of circumstances.
While it may be unprecedented for an order of visitation to be incorporated with an order of adoption, this is an extraordinary case and there is some precedent for such action by a court of equitable jurisdiction. Thus, in Matter of McDevitt (176 App. Div. 418, 423, affd. on other grounds 221 N. Y. 598) the Appellate Division in a dictum stated: “ The Supreme Court has ample power at law and in equity to promote the welfare of the child, notwithstanding a legal adoption. [Citations omitted.] The power to permit and to regulate visitation on the part of the mother is, of course, included.”
It should be emphasized that separation agreements between parents do not bind their minor child who is not a party to them nor do they prevent a court from departing from provisions of such an agreement if the court has evidence of a better plan for a child with respect to custody, visitation or support as between the parents. And section 72 of the Domestic Relations Law grants parents of a deceased parent certain rights of visitation with respect to their minor grandchildren; but the reasoning behind the legislation is based upon the heartbreak of the grandparents rather than the best interests of the child. (See Matter of Scranton v. Hutter, 40 A D 2d 296, 297, 298.) This court is in accord with the trend of legislation favoring grandparents, so long as the right of the minor child remains the paramount consideration of the court.
The eloquent language and reasoning of the Appellate Division, Fourth Department, quoting the California Supreme Court in support of grandparents’ visitation of grandchildren adopted after the death of the grandchildren’s parents, applies in its/ *110 basic principle to a natural parent who becomes technically a nonparent or ex-parent by virtue of the order of adoption. The court there said (p. 299): “In its decision, it cited Matter of Zook (62 Cal. 2d 492, 494 — 496) which stated: ‘ Unquestionably the substitution of adoptive for natural parents serves a great number of social objectives. On the other hand the law should not and cannot ignore the fact that an adopted person may not in many respects be cut off from his natural family. If affection and regard remains between members of a natural family, the law should not in the name of consistency undertake to thwart the expression of those feelings when the encouragement thereof does not hinder the adoptive relationships.’ ”
This reasoning favoring visitation by “former” grandparents applies as well to “ former ” parents. “ The life of the law has not been logic; it has been experience,” as Mr. Justice Oliver Wendell Holmes has put it so well. This child by reason of this proceeding, is acquiring not only a stable second parent, but the prospect of visitation from a loving natural father and stepmother. This development is akin to acquiring loving godparents or a loving uncle and aunt.
Whether the .Surrogate’s Court has equitable jurisdiction simL lar to that of the Supreme Court in respect to awarding visitation, as an adjunct to adoption, is a problem to which we now address ourselves.
Section 110 of the Domestic Relations Law provides that: “ An order of adoption * * * by a surrogate or by a judge shall have the force and effect of and shall be entitled to all the presumptions attaching to a judgment rendered by a court of general jurisdiction in a common law action. ’ ’
The /Constitution of the State of New York (art. VI, § 12, subd. e) provides that “ The surrogate’s court shall exercise such equity jurisdiction as may be provided by law ’ ’ and finally, SCPA 201 under the title “ General jurisdiction of the surrogate’s court ” provides: “ 2. This and any grant of jurisdiction to the court shall be deemed an affirmative exercise of the legislative power under § 12 (e) of Article VL of1 the Constitution and. shall in all instances be deemed to include and confer upon the court full equity jurisdiction as to any action, proceeding or other matter over which jurisdiction is or may be conferred. ’ ’
Surrogate’s courts have made determinations awarding custody as incident to (or under the guise of) proceedings for guardianship of minors both older and younger than 14 (e.g. Matter of Stuart, 280 N. Y. 245; Matter of Bock, 280 N. Y. 349; *111 Matter of Leslie L., 76 Misc 2d 305). Here .we award visitation as incident to an adoption proceeding.
This court will retain jurisdiction and will he available at the request of either or both parties, to modify the order of visitation in the event of change of circumstances. Also available are other courts of competent jurisdiction if the infant’s domicile will he properly changed to another jurisdiction.
Submit order of adoption and visitation accordingly on notice.