OPINION OF THE COURT
Stanley Gartenstein, J.
On November 21, 1977, this court issued an order (92 Mise 2d 652) terminating for a second time respondent mother’s parental rights to the infant Suzanne who had been adopted pursuant to a first termination order since reversed (54 AD2d 673). This second order dismissed a statutory cause of action in permanent neglect for failure of proof, yet decreed a so- *734 called "no-fault” termination based upon this court’s reading of Appellate Division cases (cf. Matter of Abbott House v Barbara J., 55 AD2d 604; Matter of Kim Marie J., 59 AD2d 716; Leticia Rose M., 54 AD2d 909; Matter of Jean Yvette E., 59 AD2d 907) the effect of which was to construe the landmark adjudication of the Court of Appeals in Bennett v Jeffreys (40 NY2d 543) as rendering the statutory scheme in this sphere irrelevant in favor of an overriding "best interests of the child” criteria. This was in turn triggered by a finding of "extraordinary circumstances” (Bennett, supra, p 544), a new judicially created category in proceedings for termination of parental rights.[1] At the same time, a second proceeding aimed at terminating respondent’s rights to the younger infant Hime was held in abeyance pending a determination of her best interests even though the court dismissed the statutory cause of action, again under the Bennett v Jeffreys doctrine as thus expanded by the Appellate Divisions. A separate dispositional hearing as to Hime was ordered after a transition period during which efforts were to go forward aimed at building a relationship between natural mother and daughter which might form the basis of a disposition returning Hime to her. This transition was to be planned and supervised by a Legal Aid Society social worker on behalf of the infant’s Law Guardian. The dispositional hearing as so ordered was held and concluded after a transition period during which every effort at building the nucleus of a mother-daughter relationship was tried and failed. It is unnecessary to catalogue these efforts in detail. At best, Hime thought of her natural mother as her "other Mommy from the playroom” (a room at the agency in which visitation often took place). On the other hand, the worst aspects of this relationship can be characterized by a disagreement between them in which Mrs. Y. threatened to kill herself only to be told by Hime to "go ahead”. Suffice it to say, through no fault of the natural mother, social worker, foster mother or child, efforts to establish this relationship fell short. We are now faced with the classic dilemma in termination proceedings: What disposition *735 is the court to order where no cause of action against natural parent exists but where return of the child to her would be disastrous?[2] We cannot answer this question as to Hime as we did with Suzanne in our prior decision decreeing "no-fault” termination first because the "extraordinary circumstances” are less clear-cut; second, because the Court of Appeals has clarified some of the uncertainty created by Bennett v Jeffreys (supra) in its subsequent holding in Matter of Corey L. (45 NY2d 383, 391-392, decided July 13, 1978) in which it stated: "Where the issue was the right of a natural parent to custody of his child, this court has not hesitated to hold that a parent cannot be displaced because "someone else could do a 'better job’ of raising the child”; rather, only when "extraordinary circumstances” such as abandonment, unfitness, or persistent neglect are found, "the court must then make the disposition that is in the best interest of the child” (Matter of Bennett v Jeffreys, 40 NY2d 543, 548, supra). If, for purposes of determining mere custody, the best interests of the child would not permit a parent to be displaced in the absence of extraordinary circumstances, surely a complete termination of obligations and rights is not to be allowed in a situation, where, as here, abandonment has not been established, even if an ensuing adoption might be viewed by some to be in the best interests of the child.”
It now appears that the Court of Appeals has signalled the separate Appellate Divisions without acknowledging the uncertainty created in the wake of its original holding, that they have carried the broad language of Bennett v Jeffreys’ obiter dictum too far. Whatever evolution future decisions will take, it now appears clear that whether or not the high court actually intended that the Appellate Divisions create an atmosphere in which "no-fault” termination can and must exist, it is, at least at this stage, disapproving of overly broad applications thereof.
We find nothing in Corey L. which might dilute the application of Bennett v Jeffreys’ broad language to the extraordi *736 nary circumstances surrounding our prior decision as to Suzanne. As to Hime, however, while we find no authority to grant termination, this new holding is sufficiently clear to mandate that while we dismiss termination proceedings, we can and must, in Hime’s best interests, grant long-term custody to the foster parents with liberal visitation to respondent mother. In doing so, we note that Corey L. returns exactly to the stance of Benitez v Llanos (39 NY2d 758) as it relates to custody. In that light, we respectfully believe that Bennett becomes expositive of a general attitude rather than controlling on the law.
This decision effectively places the relationship between foster parents and natural mother on a direct footing subject to further order of this court if warranted by changed circumstances. The agency which has been functioning in the interim on a de facto basis is relieved with the thanks of the court.
Settle order on notice calling for custody to the foster parents and providing for liberal visitation and specifics thereof in favor of the biological mother. (Cf. Matter of Raana Beth N., 78 Misc 2d 105; Matter of Patricia A. W., 89 Misc 2d 368; Matter of Suzanne Y, 92 Misc 2d 652.)

. Reaction to this court’s original decision herein (Carrieri, Important Decision on Foster Children, NYLJ, March 6, 1978, p 2, col 6; Kaplan, The Misbegotten Progeny of Bennett v. Jeffreys, J. R.’D. Newsletter, vol 4, p 1, Feb.-March, 1978; Foster and Freed, Law and the Family, NYLJ, April 28, 1978, p 2, col 4) overlooks our basic discomfort with decisions which we respectfully view as taking Bennett v Jeffreys too far. Obviously, personal agreement or disagreement with these decisions was and still is irrelevant to the court’s obligation to follow their letter and spirit.

. It is here appropriate to make special mention of Mrs. Renee Krieger of the Legal Aid Society, who was assigned to carry forth the court’s instructions. The discharge of this mandate required innovative social work in an area which has proven to be one of the most pronounced failures of the law and social work to mesh. Our insights and those of counsel were sharpened by perceptive reports rendered after many frustrations with which new concepts must be fraught. That success could not be achieved under impossible circumstances should not deter social work professionals from building on the foundation thus established.