OPINION OF THE COURT
Joseph S. Mattina, S.
This court is presented with the question of whether to sanction a proposed final order of adoption which would provide for *637 postadoption visitation on an annual basis as well as the exchange of photographs.
Baby Boy D. was born March 15, 1998. The adoptive parents filed their petition for adoption of Baby Boy D. March 25, 1998. This court held the judicial consent hearing on March 25, 1998 followed by the adoption proceeding on March 27, 1998.
The birth mother executed an extra-judicial consent dated March 16, 1998 and signed an unconditional judicial consent dated March 25, 1998. During the judicial consent hearing before this court, this court found that the birth mother gave her consent to the adoption knowingly, willingly, voluntarily and rationally to allow the adoption to go forward.
The court reserved its decision on the question now addressed by this decision. To safeguard the interest of the child, the court appointed a guardian ad litem in addition to requesting that the attorneys for the respective parties submit memoranda of law on the question of open adoptions. Further, the court requested the social worker assigned to the case to file a written report with the court as to the advantages and disadvantages on the issue of open adoptions.
Counsel for the adoptive parents and counsel for the birth mother advised the court that, prior to the birth of Baby Boy D., the adoptive parents and the birth mother met to exchange birth-related information and to discuss the birth mother’s express desire for postadoption visitation and the exchange of pictures. Ostensibly, the adoptive parents have agreed to the birth mother’s request in that they would agree to the proposed language set forth in the final order of adoption as proposed by the birth mother’s attorney, nonetheless, now their attorney suggests that the final order of adoption remain as the Legislature intended or in the alternative that the birth mother and adoptive parents enter into some type of ancillary written agreement to memorialize their intentions to honor their understanding to allow for postadoption visitation and photo exchanges as long as such contacts are deemed to be in the best interest of the child.
This decision does not address the validity or enforceability of such an agreement.
The language proposed in the final order of adoption to codify the understanding of the parties reads as follows:
“The adoptive parents agree to provide to the birth mother photographs of the adoptive child at least annually. These photographs shall be forwarded to the birth mother directly for *638 so long as the birth mother keeps the adoptive parents apprised of her current address, and for so long as the birth mother provides the adoptive parents current pictures of herself, which shall be the birth mother’s affirmative obligation.
“The parties agree that the adoptive parents shall make the adoptive child available for supervised visitation with the birth mother, once annually, at a location and time agreed upon by the parties. Visitation shall always be in the presence of the adoptive parents and shall be for a period of approximately two (2) hours’ duration. The parties agree that such visitation shall commence following the child’s second birthday and shall continue annually until the child’s seventeenth (17th) birthday. The adoptive parents agree to provide the adoptive child with current information regarding the New York State Adoption Registry following the child’s seventeenth (17th) birthday, but prior to the child’s eighteenth (18th) birthday allowing the adoptive child to make an informed decision as to registering following his eighteenth (18th) birthday.
“The parties agree the best interests of the child shall be the primary consideration in providing the birth mother with annual access to the child on the aforementioned schedule. The parties agree that if either the adoptive couple or the birth mother believes that it is not in the child’s best interests to exercise the aforementioned visitation that said party adhering to this position shall notify the other party in writing at least sixty (60) days prior to the one (1) year anniversary following the last visitation.”
While the attorney for the birth mother reminds this court that we have had cases in this court which have allowed for the limited exchange of pictures and letters following placement of a child for adoption, the court has allowed for such through a third-party intermediary, such as a court-appointed social worker. This court also recognizes that “adoptive parents are free, at their election, to permit contacts between the adopted child and the child’s biological parent” (Matter of Gregory B., 74 NY2d 77, 91 [1989]). This court has reviewed the memoranda and the report submitted by the social worker. However, since there is no right to adoption under common law, the court must be guided by the statutory provisions which govern adoptions. The statutory provisions relating to the question of postadoption visitation are Social Services Law § 383-c, “Guardianship and custody of children in foster care”, and Domestic Relations Law §§ 71 and 72. Sections 71 and 72 of the *639 Domestic Relations Law relate to postadoption visitation with biological grandparents and biological siblings respectively.
The aforementioned provisions convey standing to the respective parties to petition the court for visitation. Social Services Law § 383-c may provide guidance as to specific circumstances, i.e., agency adoptions. However, this is a private-placement adoption in which case the court looks to Domestic Relations Law § 117 (1) (a), “Effect of adoption”. Further, the New York State Legislature amended the Social Services Law, effective January 1, 1991 (L 1990, ch 480), to give the biological parent standing to petition the court for visitation. The Legislature did not amend Domestic Relations Law § 117 (1) (a).
This court recognizes that there have been circumstances under which courts have allowed postadoption visitation as well as circumstances in which a Surrogate’s Court, in the exercise of its equity jurisdiction, included provisions for visitation of a child in the order of adoption (Matter of Raana Beth N., 78 Misc 2d 105 [1974]). However, that was a case where the court indicated there were unusual circumstances, circumstances which are not present in the case at bar. That case involved a stepparent adoption of a 5 Vz-y ear-old child with whom the biological father wanted to resume visitation.
The Court of Appeals in Matter of Gregory B. (74 NY2d 77, 90-91 [1989], supra) observed that “the ‘open’ adoption concept would appear to be inconsistent with this State’s view as expressed by the Legislature that adoption relieves the biological parent of ‘all parental duties toward and of all responsibilities for’ the adoptive child over whom the parent ‘shall have no rights’ (Domestic Relations Law § 117 [1] [a]; Matter of Best, 66 NY2d 151).”
Yet, the Court of Appeals in Matter of Gregory B. (supra, at 90-91) recognized a trend toward “ ‘open’ adoptions in which the court supplements an order of adoption with a provision directing that the adopted child have continuing contacts and visitation with members of [the] biological family.” However, the Court of Appeals emphasized such as a possibility because the child was older and had established strong emotional attachments to the birth family. The case of Gregory B. involved the adoption of a nine-year-old child.
The statutory provision of the law, Domestic Relations Law § 117 (1) (a), which state's in relevant part that “[a]fter the making of an order of adoption the natural parents of the adoptive child shall be relieved of all parental duties”, appears to *640 mandate that the adoption sever the tie to the biological parent. In contrast to Domestic Relations Law § 117, Social Services Law § 383-c specifically permits the biological parent to surrender the child for adoption yet reserve the right to post-adoption communication and visitation with the child. However, the surrender specifically reserves the postadoption right in the surrender instrument. Social Services Law § 383-c (2) reads as follows: “[s]uch guardianship shall be in accordance with the provisions of this article and the instrument shall be upon such terms and subject to such conditions as may be agreed upon by the parties thereto and shall comply with subdivision five of this section”. Subdivision (5) (b) (2) provides, inter alia, that the surrender instrument shall provide “that the parent is giving up all rights to have custody, visit with, speak with, write to or learn about the child, forever, unless the parties have agreed to different terms pursuant to subdivision two of this section, and unless such terms are written in the surrender”.
This section gives the biological parent standing to petition the court for continuing contact with the child. Where the privilege is explicitly reserved in the surrender instrument, the court then determines whether the proposed contact is in the best interest of the child. As noted by Alan D. Scheinkman, “the statute specifically invites the biological parent to vary the usual surrendering provisions by reserving rights of visitation and communication” (Scheinkman, 1993 Supp Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C117:l, 1998 Pocket Part, at 245).
Counsel for the birth mother argues that Chief Judge Kaye, writing for the majority in Matter of Jacob (86 NY2d 651 [1995]), acknowledges that the enacting of the amendment to Social Services Law § 383-c now permits open adoptions. Chief Judge Kaye also notes that the adoption statutes in New York State “represent a complex and not entirely reconcilable patchwork” (Matter of Jacob, supra, at 659).
This court’s view of the statute is that it permits an open adoption as specifically referenced therein.
Birth mother’s counsel points to the Court of Appeals case Matter of Jacob (supra) as supporting the concept of open adoptions, which may be so as it relates to the set of factual circumstances of that case. Matter of Jacob and its companion case, Matter of Dana, involved questions dealing with second parent adoptions and the issue of the termination of the parental rights of the biological parent. While the Court seems to make *641 a reference in passing as to whether New York State sanctions open adoptions, this court does not find that reference sufficiently illustrative to provide guidance under the factual circumstances of this case.
Further, counsel for the birth mother argues that the Court of Appeals decision in Matter of Jacob (supra), in dicta, is instructive on “Open Adoptions” in New York State. However, as Chief Judge Kaye notes, it is clear that Domestic Relations Law § 117, designed as a shield to protect new adoptive families, was never intended as a sword to prohibit otherwise beneficial intra-family adoptions by second parents. The case before this court is not an intra-family adoption and it is precisely this type of adoption, i.e., new family adoption situation, which Domestic Relations Law § 117 was intended to protect.
Many of the cases relied on by counsel in their respective briefs involved factual circumstances with the common denominator in that there existed some degree of an already-established relationship between the adoptive child and the party seeking postadoptive visitation (People ex rel. Sibley v Sheppard, 54 NY2d 320 [1981]; Matter of Jacob, supra; Matter of Anthony, 113 Misc 2d 26 [1982]; Jerome E. v Commissioner of Social Servs., 187 AD2d 85 [1993]).
The court in Matter of Anthony (supra) signed an order of adoption which included a provision that the adoptive child have continued contact and visitation with his biological siblings. The court stated that the open adoption “concept offers an enlightened alternative for dealing with those situations in which the traditional adoption would be inappropriate” (Matter of Anthony, supra, at 30). The court continued that an open adoption may guarantee relationships with known members of the child’s birth family existing prior to the adoption. However, this case involved the adoption of a 12 year old who knew the facts of his adoption and had maintained a relationship with his siblings.
Domestic Relations Law § 115-b (1) requires the execution of a written consent. Both section 115-b and Social Services Law § 383-c require the biological parent execute a document that effectively terminates parental rights. The Court of Appeals looking at Domestic Relations Law § 117 and Social Services Law § 383-c held that Domestic Relations Law § 117 does not invariably require termination of parental rights in the situation where the biological parent, having consented to the adoption, has agreed to retain parental rights and to raise the child together with the second parent. The case before this court is *642 not a second parents adoption case situation. The biological mother in this case executed an unconditional consent which, pursuant to Domestic Relations Law § 117 (a), terminated her parental rights. Social Services Law § 383-c (4) (f) requires the court to “approve[ ] or disapprove! ]” a surrender. There is no provision requiring the court to hold a “best interests” hearing as to the surrender (Jerome E. v Commissioner of Social Servs., supra, at 91).
The analysis of this court comports with that stated by Alan D. Scheinkman in his 1996 Supplementary Practice Commentary (McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C117:l, 1998 Pocket Part, at 242) in which he states that the majority in Matter of Jacob (supra) read the amendment to Social Services Law § 383-c to indicate “that the Legislature did not desire DRL § 117 to be read as barring all open adoptions.” The Practice Commentary states that “[t]his analysis may be questioned since, by allowing open adoptions in the context of voluntary surrenders of parental rights to custody where authorized agencies are [involved], the Legislature may be read as merely creating a limited exception to the general rule barring open adoptions.” (Ibid.)
For the reasons stated herein, this court rejects any modification to the final order of adoption to judicially require post-adoption visitation.