[L. A. No. 21740. In Bank. Oct. 26, 1951.]

Estate of MELANIE L. LOEWENSTEIN, Deceased. HERBERT D. LOWELL, as Executor, etc., Appellant, v. THOMAS H. KUCHEL, as State Controller, etc., Respondent.

Frank M. Gunter for Appellant.

James W. Hickey, Chief Inheritance Tax Attorney, Morton L. Barker, Deputy Inheritance Tax Attorney, Walter H. Miller and Betty Jo Sheldon, Assistant Inheritance Tax Attorneys, for Respondent.

SHENK, J.—This is an appeal from an order approving the report of the inheritance tax appraiser and fixing the amount of inheritance tax due in accordance therewith.

The appeal is presented on an agreed statement. The appellant, Herbert D. Lowell, is the executor of the last will of the decedent, Melanie L. Loewenstein. He is also her son and the sole distributee under her will.

In October 1939 Henry Meis, an uncle of Melanie, in lieu of the payment of $68,828.54 under an insurance policy, contracted with Connecticut Mutual Life Insurance Company that the latter would retain the principal fund and pay interest earnings thereon monthly to Melanie and her husband Daniel during their lives; upon the death of the survivor to Melanie's son Herbert; then to Herbert's surviving widow or children; or if none survive to certain charitable organizations. A proviso in the contract reads that after October 14, 1940, Melanie "with the written consent of said Henry Meis, or, if he be deceased, with the written consent" of his legal representatives "may require the company to pay to her order, any portion of the amount retained, interest payments on the amount so paid thereupon to cease." If Herbert should become entitled to receive interest, at the age of 21 he could require the company to pay one-half of the amount retained, and at age 25 the whole thereof.

Henry Meis died on January 11, 1943, a resident of the state of Ohio and his estate was administered there, final distribution occurring on March 20, 1950. On October 24, 1947, pending imminency of distribution, Melanie and the Meis executors signed a "Request for and Consent to Withdrawals of Proceeds of Insurance Policy" and filed it with the company. The request and consent reads that since Melanie "desires to have the right and power to require" the company "to pay to her order from time to time such portion or all of the amount retained by said company," and the son Herbert and the executors of Meis "are agreeable to such payments" and "join in this agreement for the purpose of giving their written consent to such payments," Melanie, with the written consent of the executors and Herbert, "does hereby request and require" the company "to pay to her all or any portion of the amount retained," payments to be made at any time she may desire; and Herbert and the executors authorize the payment without any further consent on their part.

No further request was made by Melanie and no portion of the contract principal was actually paid to her. She died a resident of this state on February 17, 1949, her husband having predeceased her. The value of the distributable estate, including the contract principal of $68,828.24, amounts to

$166,101.64. The court's order fixed an inheritance tax of $7,777.11 on the transfer to Herbert of the whole thereof after deduction of the statutory exemption. Herbert objected to the inclusion of the value of the income contract in the taxable estate transferable to him on the ground that the contract was purchased with funds of Henry Meis, and that the transfer of those funds was effected during the lifetime of Henry Meis pursuant to the income contract and was taxable solely in the course of administration of his estate. The respondent State Controller has sought to uphold the questioned portion of the tax on the ground that a transfer from Melanie resulted from her completed ownership of the fund pursuant to the request for and consent to withdrawal. The court overruled Herbert's objections and found that pursuant to the contract and to the request and consent the parties accomplished a transfer to Melanie of the absolute ownership of the contract fund. It was thereupon concluded in effect that an interest passed to Herbert under the will of Melanie which was a succession subject to the tax. (Rev. & Tax. Code, § 13601.)

The agreed statement recites that evidence was offered by Herbert as to the parties' intention in executing the request and consent and as to representations by Melanie that no withdrawals would be made by her except on his further express request and consent and that in each instance the moneys would be received by her solely for his account and use. The court excluded this evidence. It is contended that the evidence should have been received to show that no actual change in ownership was intended by the request and consent in the absence of subsequent actual withdrawal of funds. If the evidence be considered as if in the record, insofar as the subject matter here involved is concerned, it could not overcome the clear effect of the contract and the executed request and consent to withdrawal of the fund.

We are not here construing the language of a statute. We are concerned with executed instruments dealing with transfers of ownership of property in order to determine the legal effect for tax purposes. If the effect of the instruments is as found and concluded by the probate court the order properly fixed the tax.

There was nothing in the contract to prevent Melanie's withdrawal of the entire fund with the consent of the Meis executors. She so requested and they consented. The consent of Herbert or of any other appointee under the contract was not made a prerequisite to Melanie's exercise of the power to

withdraw the fund. Prior to the exercise of that power the gift to her was qualified and limited. The execution of the request and consent completed the gift to her. She thereby obtained unqualified ownership of the principal fund, or the equivalent attributes of ownership which here must be deemed controlling. (See *Estate of Newton*, 35 Cal.2d 830, 835 [221 P.2d 952].) Upon the execution of the request and consent all control by Meis or his representatives and of contingent remaindermen was terminated. Thereby in legal effect Melanie became the owner of the fund as fully as though it were on deposit to her account in a bank. It became a fund on deposit to her order with the insurance company and as such a part of her estate. (*Cf. Fisher* v. *Ludwig*, 6 Cal.App. 144 [91 P. 658].)

Section 13648 of the Revenue and Taxation Code declares the intent and purpose to tax every transfer made in lieu of or to avoid the passing of property by will or the laws of succession. The policy inherent in that expressed intent and purpose also requires the rejection of a dubious construction of the instrument, executed after the *inter vivos* transfer by Meis, which would permit the evasion of a tax otherwise due on a subsequent succession. Other property concepts relied upon by the appellant do not prevent the determined effect of that instrument. ▉ It is urged that the contract be viewed as bestowing on Melanie a life estate with power to consume the corpus (*Cf. Estate of Rath*, 10 Cal.2d 399 [75 P.2d 509, 115 A.L.R. 836]; *Lord* v. *Atchison*, 12 Cal.2d 681, 686 [87 P.2d 346]), the unconsumed portion remaining subject to the contract. This theory overlooks the fact that in legal contemplation the completion of the gift to Melanie is the equivalent of the consumption by her of the entire fund. It may not be contended that sums actually withdrawn and unexpended on her death would not be subject to the taxing statute. It follows that the completed right to withdraw the fund, as money on deposit to her order, is equivalent to the actual withdrawal thereof.

▉ The same answer disposes of the contention that the exercise of the right to withdraw the fund was the exercise of a power of appointment, and that on the facts under the statute only the gift of that power was taxable. The contention might apply if Melanie received the gift of a life estate with the power to appoint Herbert as the person to take on its termination. (*Cf. Estate of Newton, supra*, 35 Cal.2d 830.) But that is not the legal effect here. By the gift of a life estate to Melanie plus the exercise of the power to make

the gift to her of the entire fund absolute in her lifetime, Melanie received a completed gift of the fund which for all intents and purposes became a portion of her estate. The state is not here taxing either the exercise or the nonexercise of that donated power; and whatever taxability was involved in the gift of the power, or the exercise or nonexercise thereof, is outside the domain of consideration. Therefore statutes, either federal or state, governing the taxation of the gift or the exercise of such powers, have no pertinency. When as here an absolute gift has been accomplished and a subsequent independent succession is disclosed, that succession is subject to the taxing statute.

The further assertion that the trust could not be terminated without the consent of the remaindermen, some perhaps not yet in being, assumes only one possible method of termination. The contract provided otherwise, so that possible future interests were contingent upon the nonexercise of the power to complete the gift of the entire fund. (*Cf. Estate of Madison,* 26 Cal.2d 453, 465 [159 P.2d 630] ; *Bixby* v. *California Trust Co.,* 33 Cal.2d 495, 497 [202 P.2d 1018] ; *Childs* v. *Gross,* 41 Cal.App.2d 680, 693 [107 P.2d 424].) As noted, that power was exercised.

The tax imposed is one on the privilege of succession. (*Estate of Barter,* 30 Cal.2d 549, 556 [184 P.2d 305] and cases cited.) The probate court correctly concluded that Herbert succeeded to the property on the death of and therefore pursuant to the will of Melanie, and that the succession is taxable as determined by the order. The foregoing is not intended, however, to dispose of contentions that certain items of deductions in the inheritance tax report are miscomputed as relating to a transfer inter vivos. If there are such miscomputations the affirmance herein is not to be deemed to preclude a recomputation to accord with the views expressed herein.

The order is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

The opinion was modified to read as above printed and appellant's petition for a rehearing was denied November 19, 1951.