[S. F. No. 18436.  In Bank.  Aug. 17, 1954.]

ROBERT C. KIRKWOOD, as State Controller, Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a Corporation), as Trustee, Appellant.

George H. Koster and Bayley Kohlmeier for Appellant.

James W. Hickey, Chief Inheritance Tax Attorney, Charles J. Barry and Raymond G. LaNoue, Deputy Inheritance Tax Attorneys, and Newell C. Barnett, Assistant Inheritance Tax Attorney, for Respondent.

SPENCE, J.—This is an appeal from an order overruling objections to the report of the inheritance tax appraiser and fixing the amount of the inheritance tax due upon the death of Charles Grant Butts. The case was tried on a written stipulation of facts.

The sole question to be determined is whether the widow here, who takes the major portion but less than the entire property transferred to herself and others pursuant to the terms of an *inter vivos* revocable trust created with her written consent from community assets during her husband's lifetime, is entitled to a community property exclusion to the extent of one-half of the entire property transferred in trust or only to an exclusion of one-half of the property transferred in trust to her. The parties agree that she would have been entitled to the claimed community property exclusion if she had taken her statutory interest in the property upon

her husband's death (Prob. Code, § 201; Rev. & Tax. Code, § 13551) or had taken pursuant to an election in the event a similar trust, testamentary in character, had been created by her husband's will (Rev. & Tax. Code, § 13552). The court ruled that the fact that she received the property through an *inter vivos* transfer (Rev. & Tax. Code, § 13554) precluded allowance of the community property exclusion to the extent claimed. The plain language of section 13554 of the Revenue and Taxation Code compels the conclusion that the trial court was correct in its denial of the widow's claim, and its order must therefore be affirmed.

The decedent and Augusta E. Butts were husband and wife. In 1948 he, as trustor, executed, with his wife's written consent, a trust agreement designating the Bank of America National Trust and Savings Association as trustee. The corpus of the trust was entirely pre-1927 community property. (Civ. Code, § 161a, effective July 29, 1927.) The trust agreement provided that during the lifetime of decedent, all the net income from the trust estate was to be paid to him or expended on his behalf, and the trustee was empowered to pay such additional sums to decedent and his wife as it should deem necessary for their proper care, support, and maintenance. The agreement further provided that if the trustor was survived by his wife, the trustee was to divide the trust estate into two equal portions designated Part A and Part B. She was to receive during her life all the net income from both parts, with discretion in the trustee to resort to the corpus should such income be insufficient for her needs. She also was given the right "to change or amend any provisions of the trust relative to the said Part A, and to revoke the trust as to said Part A in whole or in part and to take out of and remove from the operation of the trust any part or all of said Part A" and the power "to appoint the entire corpus of said Part A, including all of the income thereunto pertaining, free of the trust, to the fullest extent. . . ." It was further provided that upon the death of the wife (following the death of decedent), the trustee should deliver all of Part B and that portion of Part A over which the wife had failed to exercise her rights, in equal shares, to the two sons of decedent and his wife, or if no surviving son, to their issue, and if no surviving issue, then such property should revert to the trustor's estate. The trust was revocable at any time by the trustor during his lifetime.

Decedent died on December 22, 1949, without making any change in the above terms of the trust agreement. He left his widow and two sons surviving. The trust consisted entirely of property which had been the community property of the spouses. Its net value, after allowable deductions including the federal estate tax, was $336,564.40. The parties agree that the following valuations on the various interests in the trust are correct; widow's interest in Part A is $168,282.20, ·or one-half of the total net corpus; widow's interest in Part B is $37,294.81, or the value of her life estate; sons' interest in Part A is nothing; sons' interest in part B is $130,987.39, or $168,282.20 minus the life estate value of $37,294.81.

Appellant trustee, on behalf of the widow, concedes that the *inter vivos* transfer of the property under the trust was made in contemplation of death and was therefore subject to the inheritance tax but contends that the method of transfer does not affect the community property exclusion available to the widow. One-half the net value of the entire trust property was $168,282.20, but the community property exclusion allowed her by the inheritance tax appraiser and approved by the court was $102,788.51. If the trust had not been created and the widow had taken her statutory portion of the community property upon her husband's death (Prob. Code, § 201,* with Rev. & Tax. Code, § 13551* applicable) or if she had taken exactly the same interest in a testamentary trust created by her husband's will (Rev. & Tax. Code, § 13552*), she would have been entitled to and allowed a community property exclusion of $168,282.20. Here, however, by reason of the method of transfer selected by the spouses, the tax was assessed under section 13554 of the Revenue and

*Prob. Code, § 201: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, . . ."

Rev. & Tax. Code, § 13551: "Upon the death of a husband: (a) At least one-half of the community property is subject to this part. (b) The one-half of the community property which belongs and goes to the surviving wife pursuant to Section 201 of the Probate Code is not subject to this part. (c) All of the community property passing to anyone other than the wife is subject to this part."

Rev. & Tax. Code, § 13552: "When a husband by a will making a testamentary disposition of the community property forces his surviving wife to elect whether to share in his estate under the will or to take her one-half of the community property pursuant to Section 201 of the Probate Code, and she elects to take under the will, the property thus taken up to a value not exceeding one-half of the value of the community is not subject to this part."

Taxation Code. That section deals with "transfers of community property inter vivos between spouses" and provides: "Where community property is transferred . . . other than by will or the laws of succession from one spouse to the other: (a) One-half of the property transferred is subject to this part (inheritance tax) if the wife is the transferee; . . . (b) None of the property transferred is subject to this part if the husband is the transferee." Accordingly, the inheritance tax appraiser determined the community property exclusion of the widow to be $102,788.51, computed as follows: $168,282.20, her interest in Part A, plus $37,294.81, her life estate in Part B, totaling $205,577.01, as the amount of the property transferred to her under the trust, and divided by two to give the taxable interest of $102,788.51.

■ Appellant argues that regardless of the form of the transfer, the widow was entitled to an exclusion to the extent of $168,282.20 because that amount "already belonged to her" as community property, and her only taxable interest was the value of the life estate, $37,294.81. Such argument cannot prevail in the light of the explicit provisions of section 13554 of the Revenue and Taxation Code.

Sections 13551 to 13556 of the Revenue and Taxation Code deal with the subject of community property and set forth the manner and method of taxation on the death of a spouse. With respect to the widow's tax status upon the happening of possible contingencies, section 13551 concerns her rights under the laws of succession upon the death of her husband intestate or in the absence of her election to take under her husband's will; section 13552 concerns her rights when she elects to take under her husband's will; and section 13554 concerns her rights when she takes pursuant to a transfer of "community property inter vivos between spouses." Thus, the Legislature, by separate and distinct enactments, has provided for the tax consequences resulting from the several methods by which the property may pass to the widow. What part of the transfer is subject to tax and what shall be excluded is made to depend upon the method of transfer. It therefore is of no avail to argue the tax consequences contrary to the realities of this case: where an *inter vivos* trust was created; where there was no will and hence no testamentary disposition; and where the widow did not take under the laws of succession.

■ The California inheritance tax is not a property tax but is a succession tax, imposed by reason of the beneficial

succession to property upon the death of another. (24 Cal. Jur. § 395, pp. 424-425; *Estate of Rath*, 10 Cal.2d 399, 405 [75 P.2d 509, 115 A.L.R. 836].) It applies to transfers by will or intestate succession and in order to prevent tax evasion, it also applies to certain *inter vivos* transfers which are testamentary in character. With regard to these latter transfers, the legislative purpose is expressly declared in section 13648 of the Revenue & Taxation Code to be "the intent . . . to tax every transfer made in lieu of or to avoid the passing of property by will or the laws of succession."

For inheritance tax purposes, no distinction is made in the treatment of community property according to whether it was acquired before 1927, wherein the interest of the wife was substantial and more than that of an heir (*Estate of Brix*, 181 Cal. 667, 676 [186 P. 135]; *Stewart* v. *Stewart*, 199 Cal. 318, 342 [249 P. 197]) or after 1927, with each spouse having "present, existing and equal interests" therein "during continuance of the marriage relation" (Civ. Code, § 161a). Community property is simply defined to include "all property, other than separate property, acquired by a husband and wife during their marriage relationship." (Cal. Admin. Code, tit. 18, ch. 1, subch. 2, § 619; see Civ. Code, §§ 162, 163, 687.) In either case—whether acquired pre-1927 or post-1927—one-half of the community property is recognized as belonging to the surviving wife. (*Estate of Atwell*, 85 Cal.App.2d 454, 461 [193 P.2d 519].) But these general principles do not aid appellant, for the tax problem does not concern the wife's interest in the community property *before the transfer* but rather the interest which she received on the husband's death *by virtue of the transfer*, to which she gave her written consent.

As appears from the trust agreement, the primary purpose and intent of the trustor was that the two sons should have the ultimate ownership of all the property in equal shares, with their mother entitled to at least a life interest therein, and more than that if she desired or needed it. The trust was designed to avoid probate proceedings on the death of both spouses. The husband was the transferor, with the wife's consent. (See *Strong* v. *Strong*, 22 Cal.2d 540, 543 [140 P.2d 386]; *Riley* v. *Gordon*, 137 Cal.App.311, 315 [30 P.2d 617]; also 3 Cal.Jur. 10-Yr.Supp, § 88, p. 593.) At the time of the transfer she had the power of restraint (Civ. Code, § 172a) but instead of exercising it by withholding

her signature (see *Strong* v. *Strong, supra,* p. 544), she, with the advice of counsel, signed a formal consent to "all of the terms and conditions" of the "Trust Agreement." She thereby parted voluntarily with her expectant statutory rights in the community property as they existed before the transfer, and she succeeded to a new and different interest in the property subject to the trust upon giving her consent to the *inter vivos* disposition breaking up the community status of the property transferred.

This is an entirely different situation from the case of the transfer of community property under the laws of succession or as the result of a will, and the Legislature has provided for its taxation in language (Rev. & Tax. Code, § 13554) wholly dissimilar from the provisions governing the other methods of transfer (Rev. & Tax. Code, §§ 13551, 13552). ■ When the trustor and his wife had the question of the disposition of their community property under consideration, they were chargeable with notice that the impact of the inheritance tax would depend upon the method of transfer which they chose to adopt. The choice was made voluntarily and the tax consequences must follow accordingly. ■ Appellant cites section 13408 of the Revenue and Taxation Code in support of the contention that in every type of transfer of community property to the wife, the extent of the community property exclusion from the tax must be the same. However, that section is merely a valuation provision authorizing the aggregation of several transfers made to one person and the allowance of only one exemption thereon in computation of the tax. (*Estate of Childs,* 18 Cal.2d 237, 244 [115 P.2d 432, 136 A.L.R. 333].) It has no bearing on the problem at hand, which involves a single transfer.

■ It is true that the tax on this *inter vivos* transfer, intended to operate as a substitute for a transfer by will or intestate succession, is in the general nature of an "in lieu" tax. (Rev. & Tax. Code, § 13648; see 24 Cal.Jur. § 413, pp. 450-451; *Kelly* v. *Woolsey,* 177 Cal. 325, 328 [170 P. 837]; *Estate of Potter,* 188 Cal. 55, 63 [204 P. 826]; *Estate of Madison,* 26 Cal.2d 453, 463 [159 P.2d 630].) However, that does not mean that the same tax consequences should attach to such *inter vivos* transfer pursuant to section 13554 as would attach in cases coming under the provisions of sections 13551 and 13552. The Legislature has provided differently in the case of an *inter vivos* transfer, and its intent must be determined from the plain language used.

Since the "inheritance tax law" (Rev. & Tax. Code, § 13301 et seq.) is a general enactment, a proviso excepting any part of a transfer from the otherwise imposed tax must be construed strictly in accord with its express language. (*Johnson* v. *Board of Supervisors,* 208 Cal. 282, 285 [281 P. 57].) It may well be argued that it is appropriate that the community exclusion allowed the widow should be the full one-half value thereof regardless of the form of the transfer, but that is a matter of policy for the Legislature to determine. (*Lucas* v. *City of Los Angeles,* 10 Cal.2d 476, 485 [75 P.2d 599] ; *Estate of Carter,* 9 Cal.App.2d 714, 718 [50 P.2d 1057].) Words may not be inserted in a statutory provision under the guise of interpretation. As said in *In re Miller,* 31 Cal.2d 191, at page 199 [187 P.2d 722] : ". . . it is the function of the courts to construe and apply the law as it is enacted and not to add thereto nor detract therefrom." There is nothing in the inheritance tax law which indicates that the Legislature intended to provide the same measure of exclusion in the case of an *inter vivos* transfer as prevails with another type of transfer effective at death. On the contrary, the Legislature has evidenced a different intent with respect to an *inter vivos* transfer, and the inheritance tax appraiser has correctly followed the legislative mandate in subjecting the widow to a tax based on "one-half of the property transferred" to her by virtue of the *inter vivos* trust. (Rev. & Tax. Code, § 13554.)

In the disposition of this case, the parties agree that certain items of deduction were erroneously computed in the inheritance tax report. The parties have stipulated as to the correct figures, and the affirmance of the allowable exclusion in the report as above discussed presumes appropriate recomputation will be made as indicated in the stipulation. (See *Estate of Loewenstein,* 37 Cal.2d 843, 848 [236 P.2d 566].)

The order is affirmed, without costs to either party.

Shenk, Acting C. J., Carter, J., Traynor, J., Schauer, J., and Peek, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.