[Civ. No. 46920. Second Dist., Div. Three. Mar. 25, 1976.]

Estate of BELLE CROWELL, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant, v.
R. D. CROWELL, JR., as Executor, etc., Objector and Respondent.

**COUNSEL**

Myron Siedorf, Margaret Groscup and Phyllis K. Fairbanks for Petitioner and Appellant.

Chase, Rotchford, Drukker & Bogust and Ransom W. Chase for Objector and Respondent.

**OPINION**

**POTTER, J.**—Kenneth Cory, as Controller of the State of California, appeals from an adverse judgment sustaining objections filed by the executor of the estate of Belle Crowell to the report of the inheritance tax referee filed in this matter on March 19, 1974.

The referee included in his report as property of the estate of Belle Crowell subject to taxation under the inheritance tax law the sum of $651,617, which sum represented the assets of an "Irrevocable Trust" executed by the decedent on September 24, 1963, approximately five years before her death.

The only question presented on this appeal is whether the value of the property transferred under the trust instrument in 1963 is property subject to inheritance tax pursuant to section 13643 of the Revenue and Taxation Code. The section provides as follows: "A transfer conforming to Section 13641 [*inter vivos* and lacking adequate consideration] and made with the intention that it take effect in possession or enjoyment at or after the death of the transferor is a transfer subject to this part."

In the instant case Belle Crowell transferred stock in three different corporations to be divided into five equal portions and to be held in trust for the benefit of her three nephews and two nieces. In the trust instrument it was provided that the "Trustees shall accumulate the net income of the Trust Property until Grantor's death for the benefit of the remaindermen of the five Trusts." As to the trusts established for each of the grantor's three nephews, it was provided that "after and from the time of the death of" Belle Crowell the net income from each of the nephew's trusts was to be paid to each nephew for life and on his death the trust was to cease and the trust property, including any accumulated income, was to go to each nephew's living issue by right of representation. If any of the settlor's nephews died without issue, the property from that nephew's trust was to go to the living issue of the other nephews, and if none of the nephews had living issue but one or both of the other nephews was alive, then to the surviving nephew or nephews. It was further provided that if none of the nephews survived then the trust property was to pass to the two nieces, Elloine and Emily, or if either was deceased, to their then living issue.

The terms of the trusts in favor of the nieces were similar in that each was entitled to income for life only if she survived the settlor. However, upon the death of the nieces, Elloine Moseley or Emily De Ware, it was provided that the income from each of their trusts was to go to Elloine's daughter, Elloine Sinclair, for her life and then to the living issue of Elloine Sinclair. The nieces' trusts were to cease on the death of the last survivor of the children of Elloine Sinclair living at the date of the signing of the trust instrument, at which time the corpus was to be divided amongst the living issue of Elloine Sinclair.

It was provided in the trust instrument as follows: "These Trusts shall be irrevocable, and the Grantor hereby expressly waives all rights and power to alter, amend, revoke or terminate the Trusts or any of the terms of this agreement in whole or in part. The Grantor hereby renounces any interest, either vested or contingent, including any reversionary interest or possibly [*sic*] of reverter, in the income or corpus of these Trusts."

The trial court made findings of fact, including a finding that Belle Crowell "received no dividends nor made any claim to any dividends or attempted to exercise any rights relative to any dividends or other rights connected with" the shares of stock transferred by Belle Crowell to form the trusts. The trial court further found, "That the Trustor reserved no rights in said stocks and in particular reserved no sum to be payable therefrom or [rights] that were a charge upon the trust corpus or income therefrom. Said BELLE CROWELL retained no control over any of said corpus or any stock interest therein"; "That said BELLE CROWELL, as Trustor, obtained no economic benefit of the Trust assets in any fashion"; "That the Trust terminated only upon the death of the respective niece and nephew by whose name each Sub-Trust was named, whether the same occurred before or after the death of the Trustor. Upon such death the Trust bearing the name of one of said nieces or nephews ceased and terminated and all interest in the principal or income therefrom vested in the children of the niece or nephew so dying"; "That the income from each Trust was to be accumulated during the life of BELLE CROWELL as long as she survived the niece or nephew for whom the Trusts were respectively named"; and "That the income beneficiaries were not to receive any income therefrom until the death of BELLE CROWELL and their right to any of the income was contingent upon their surviving said BELLE CROWELL." The findings also show that the five income beneficiaries all survived the settlor. Based on these facts the trial court concluded that the trust assets were not properly taxable as part of Belle Crowell's estate.

On this appeal the State Controller contends that the trial court erred in concluding that the transfer in trust of the shares of stocks made by Belle Crowell in 1963 was not a transfer "made with the intention that it take effect in possession or enjoyment at or after the death of the transferor." (Rev. & Tax. Code, § 13643.)

Certain general principles with respect to the imposition of inheritance tax on *inter vivos* transfers appear to be settled. Thus in *Estate of Thurston*, 36 Cal.2d 207, at pages 209-211 [223 P.2d 12], it is stated: "The

inheritance tax is primarily a tax upon the succession to property at death. The statute expressly includes as subjects of inheritance taxation transfers of property by will, succession, or survivorship, and transfers of the proceeds of life insurance. An inheritance tax limited to the taxation of transfers from the dead to the living, however, could be easily avoided. 'The common and perhaps not unnatural aversion of property owners to the burdens of taxation appears to have applied with special force to the diminution of the estates left by them at death through the imposition of estate, inheritance, or succession taxes. The early statutes taxing property passing by will or inheritance were followed by resort to various means for avoiding subjection to the tax. Among the devices most simple and commonly resorted to were gifts in contemplation of death, and transfers, in trust or otherwise, whereby the transferor reserved to himself the life use or income for life. These artifices were met by provisions in the taxing statutes calculated to close such avenues of tax avoidance.' [Citations.] Revenue and Taxation Code, sections 13641-13648, accordingly provide for the taxation of specified *inter vivos* transfers by which the owner of property retains such an interest therein or imposes such restrictions upon the use thereof that for tax purposes he is regarded as the owner of the property at his death and his transfer thereof as a testamentary disposition. 'The statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property. It also taxes *inter vivos* transfers that are too much akin to testamentary dispositions not to be subjected to the same excise.' [Citations.] . . . [¶] . . . The express purpose of the provisions for the taxation of specified *inter vivos* transfers is to reach 'every transfer made in lieu of or to avoid the passing of property by will or the laws of succession.' (Rev. & Tax. Code, § 13648, . . . ), and only such transfers are subject to taxation." (See *Estate of Hyde,* 92 Cal.App.2d 6, 13-14 [206 P.2d 420]; *Estate of Craycroft,* 191 Cal.App.2d 436, 443 [12 Cal.Rptr. 552].)

Thus under Revenue and Taxation Code section 13642 an *inter vivos* transfer without adequate and full consideration and made in contemplation of the death of the transferor is subject to the imposition of inheritance tax. As noted above, a transfer for inadequate or no consideration made with the intention that it take effect in possession or enjoyment at or after the death of the transferor is taxable. (Rev. & Tax. Code, § 13643.) A transfer for an inadequate or no consideration and under which the transferor reserves income or an interest in the property for his life is subject to tax. (Rev. & Tax. Code, § 13644.) Tax is imposed on transfers for inadequate consideration as to which the transferee

promises to make payments to or care for the transferor as well as on revocable transfers in trust without consideration. (Rev. & Tax. Code, §§ 13645, 13646.)

In the instant case, while Belle Crowell did not attempt to retain any interest in or control over the property transferred in trust, she did provide that the net income of the trust property be accumulated "until Grantor's death for the benefit of the remaindermen of the five Trusts." And under the terms of the trust the income beneficiaries could receive nothing unless they survived the settlor.

One of the leading California cases concerning the imposition of inheritance tax on *inter vivos* transfers intended to take effect in enjoyment or possession at or after death is *Estate of Madison,* 26 Cal.2d 453 [159 P.2d 630]. In *Madison* the decedent created three trusts, one each for his two daughters and one for his son. Each trust was to continue for the life of the trustor and the income from the son's trust was to be accumulated during the life of the trustor, while the income from the daughters' trusts was to be paid to them. Each trust was to terminate upon the death of the trustor, at which time the corpus, together with the accumulated income in the case of the son's trust, was then "to go to and vest in" the respective income beneficiaries. The Supreme Court held that the transfers were subject to inheritance taxation as gifts intended to take effect in possession or enjoyment at the death of the transferor. The Supreme Court stated (26 Cal.2d at p. 457): "The issue is not whether the donor retained some power or interest until his death, but rather whether he tied up the property with so many strings, which could not be loosened until his death, that the transfer may be regarded as having been intended to take effect in possession or enjoyment at his death within the meaning of the statute. It should be noted at the outset that the statute speaks, not of title, but of possession and enjoyment. Were it not for worthy authority to the contrary, a gift of income for the trustor's life with remainder at the trustor's death would appear from the plain wording of the statute to be a transfer intended to take effect in possession or enjoyment at or after death."

The Supreme Court went on to discuss the fundamental difference between the California inheritance tax which is a succession tax " '. . . a tax on the beneficial interest of each beneficiary or heir . . .' " and the federal estate tax which is a tax " 'upon what is left by the decedent.' " The court emphasized the purpose of the inheritance tax, stating (26 Cal.2d at pp. 463-465) as follows:

"The purpose of the Legislature in imposing a tax on transfers intended to take effect at or after death is to prevent avoidance of the inheritance tax. 'The sole reason for mentioning dispositions *inter vivos* . . . is to prevent the evasion of the tax . . . by such dispositions. In contemplation of that law [the inheritance tax law], the gifts *inter vivos* therein mentioned are all presumed to have been made with the intent to evade the tax imposed on transfers taking effect by succession at death.' [Citation.] Section 2(3) (b) [present section 13643] does not impose a tax upon certain precisely defined transfers; it is rather an attempt to impose a tax in all cases, regardless of the form of transfer adopted, in which possession or enjoyment does not take effect until the donor's death.

"Even though a trustor may have parted with all interest in the property, limitations that he has imposed will last as long as the trust lasts. . . .

". . . Of all the cases that support the controller's position, perhaps none contains so clear an analysis of the problem involved as a recent Connecticut case, *Bridgeport City Trust Co.* v. *McLaughlin*: '. . . The necessary intent existed that some change in the son's rights in the trust property should take effect on his (the trustor's) death. . . . The next question is, was this change a transfer of possession or enjoyment . . . taxable under the statute? . . . The death of the settlor broke the shackles of the trustee's management of the trust and gave the son the right to use the principal as his own property. . . . To most persons the transfer of the unbridled right to handle money which they have previously been unable to invest or spend at all except as the net income is doled out to them by a trustee, would constitute a transfer of a considerable amount of enjoyment in the money. . . . ' "

In the case presently before this court, the trust created by Belle Crowell embodied an essentially testamentary disposition of the trust property. However, the provisions of the trust do present an ambiguity. On the one hand the trust provides unequivocally that the income of the trust property be accumulated *"until Grantor's death* for the benefit of the remaindermen of the five Trusts." The remaindermen of the five Trusts are the issue of the income beneficiaries. As to provisions governing the trusts for the settlor's three nephews, it is provided that "[a]fter and from the time of death of Grantor" the income is to be paid to each nephew for his life, and upon his death the Trust is to cease and the trust property is to be distributed to each nephew's living issue. This provision, read in context with the provision for the accumulation of

income for the benefit of the remaindermen, indicates that the settlor intended neither income beneficiary nor the primary remaindermen to receive the beneficial enjoyment of the trust property until "[a]fter and from the time of the death of Grantor." However, in paragraph 2(e) of the trust instrument it is provided that "[i]f either R. D. Crowell, Jr., Allen C. Crowell, or Richard T. Crowell [settlor's nephews] should die without issue surviving them, then . . . their respective trusts shall cease" and the trust property shall be conveyed to the living issue of the other nephews, or if none to one or both of the surviving nephews or if none to the two nieces or to their surviving issue. This provision contains no prefatory language limiting its application to the period of time "[a]fter and from the time of the death of Grantor" as do the other donative provisions of the trust. Thus it lends itself to an interpretation that should one of the nephews die without issue prior to the death of the settlor his trust would cease and would be subject to distribution to the remaindermen in a manner not contingent upon the death of the settlor. Such a construction is irreconcilable with the clear directive of the prior trust provision that income be accumulated for the benefit of the remaindermen until the death of the settlor. However, we need not attempt to resolve this ambiguity. ▇ The five income beneficiaries did in fact survive the settlor in this case, and inheritance tax is determined based upon the interests in actual existence at the time of decedent's death. As was said in *Estate of Huntzinger,* 38 Cal.App.3d 569, at page 577 [113 Cal.Rptr. 227]: "*Madison* [*Estate of Madison, supra*] is authority for the proposition that the unrealized possibility that the trustor's intent might have been defeated is not controlling. There, too, the trusts involved might have terminated before the trustor's death. The court said that the fact that the trustor had so provided 'shows no more than that the trustor had alternative intentions. He made dispositions intended to take effect at his death, yet indicated his willingness that they be defeated under certain contingencies. *It is irrelevant that his dispositions were subject to certain contingencies now that those contingencies can no longer occur.* In fact, the trusts lasted until the trustor's death, and the trustor certainly intended that the transfer of what remained of the corpus should take effect in possession or enjoyment at his death.' (26 Cal.2d at p. 462.) Accordingly, the interests involved in *Madison* were held to be subject to taxation."[1] (Italics added.) (See *Estate of Thurston, supra,* 36 Cal.2d 207, 211-212.)

---

[1]This result is consistent with Revenue and Taxation Code section 13411 which provides:

"(a) In the case of a transfer made subject to a contingency or condition upon the occurrence of which the right, interest, or estate of the transferee may, in whole or in

In this case the income beneficiaries never could have possessed or enjoyed the benefits of the transfer until the death of decedent, and since the income beneficiaries survived the settlor, the remaindermen also did not succeed to any possession of or enjoyment in the property transferred until after the death of the transferor.

Counsel's briefs on appeal and our independent research have revealed no California cases with a factual situation identical to that presented in the case before us. However, several cases in other jurisdictions consider analogous factual situations. (See Annot. 6 A.L.R.2d 223.)

For example in *Pape* v. *Sullivan,* 151 Conn. 39 [193 A.2d 480], the settlor transferred certain property under an irrevocable trust agreement which provided that the net income from the trust fund be accumulated during the life of the settlor and on his death the income be paid to his wife for life. It was then provided that on the wife's death,· or on the death of the settlor if his wife predeceased him, the trust fund was to be divided with income payable for life to the living children of the settlor. Finally, it was provided that upon the death of each child, his or her share was to be distributed as provided in his or her will. The question to which the appellate court addressed itself was whether the transfer in trust was "a transfer intended to take effect in possession or enjoyment at or after the death of the transferor" and thus taxable under the succession tax. The court determined that the transfer was taxable, stating (193 A.2d at p. 483) as follows:

"In the present case, the donor reserved no right to revoke or modify the trust and retained no direct benefit to himself from the income during his life. . . . Although he parted with the legal title by his conveyance to the trustees in 1937, he expressly limited the enjoyment of the property, either income or principal, until the date of his death, and, indeed, until his death, it could not be determined who of the beneficiaries named would come into the immediate possession or

---

part, be created, defeated, extended, or abridged, *the tax is computed as though the contingency or condition has occurred in such manner as to produce the highest rate of tax possible.*

"(b) Upon the occurrence of the contingency or condition after an order fixing inheritance tax has been entered in which the tax was computed at the highest rate possible pursuant to this section, the court which made the order shall, upon petition after notice to the Controller, modify said order to fix the tax due in accordance with the occurrence of the contingency or condition. The petition shall be filed within six months after the occurrence of the contingency or condition." (Italics are added.)

enjoyment of the beneficial interest at that date. We look to the situation at the time of the donor's death rather than to the situation at the time of the transfer and review the sequence of events in the order of the actual rather than the possible. [Citations.]

"We said in Fabian v. Walsh, supra [134 Conn. 459 (58 A.2d 386)]: "[I]n spite of all the events which might affect the rights of the beneficiaries before the death of the settlor, it was that death which definitely fixed those rights, and . . . the transfers were intended to take effect at the death of the transferor and were taxable.' "

The same reasoning is applicable in this case. We conclude that the transfer of stock made by Belle Crowell under the irrevocable trust, the terms of which have been outlined herein, was a transfer "made with the intention that it take effect in possession or enjoyment at or after the death of the transferor" and thus subject to taxation pursuant to Revenue and Taxation Code section 13643, and that the trial court erred in sustaining the objections of the executor to the inheritance tax referee's report.

The judgment is reversed.

Cobey, Acting P. J., and Allport, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 19, 1976.