[L.A. No. 31229. July 28, 1980.]

Estate of EDWINA F. BUTLER, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant, v.
GRACE SMITH, Individually and as Co-executrix, etc., et al.,
Objectors and Respondents.

COUNSEL

Myron Siedorf, Margaret Groscup and Patricia A. Shanahan for Petitioner and Appellant.

Lynch, Nelson & Seligmann, William B. Lynch and David C. Wright for Objectors and Respondents.

OPINION

**RICHARDSON, J.**—The Controller of the State of California, Kenneth Cory (Controller), appeals from a judgment which sustains the objections to the report of an inheritance tax referee fixing the tax in a decedent's estate. The issue presented is whether assets which constituted the corpus of two *inter vivos* trusts were subject to the California inheritance tax, in the trustor-decedent's estate. In reversing the judgment we will conclude that the property in question is taxable under statutory provisions (Rev. & Tax. Code, §§ 13641-13649) dealing with *inter vivos* transfers. (All further statutory references are to that code unless otherwise indicated.)

Initially, we focus on the relevant statutes. ■ Sections 13641 through 13649, inclusive, impose inheritance taxes on specified *inter vivos* transactions. Section 13649 (formerly § 13648) cautions: "It is hereby declared to be the intent and purpose of this part to tax every transfer made in lieu of, or to avoid, the passing of property by will or the laws of succession." Consistent with this expression, we have held that the sections "represent a legislative scheme to prevent inheritance tax evasion by imposing on the courts an obligation to 'closely scrutinize the transaction'. . . . [Citation.]" (*Estate of Bielec* (1972) 8 Cal.3d 213, 222 [104 Cal.Rptr. 516, 502 P.2d 12, 58 A.L.R.3d 1088].)

Section 13641 specifies: "If a transfer specified in this article was made during lifetime by a decedent, for a consideration in money or money's worth, but the transfer was not a bona fide sale for an adequate and full consideration in money, or money's worth, the amount of the transfer subject to this part shall be the excess of [¶] (a) The value, at the date of the transferor's death, of the property transferred, over [¶] (b) An amount equal to the same proportion of the value, at the time of the transferor's death, of the property transferred which the

consideration received in money or money's worth for the property transferred bears to the value, at the date of the transfer, of the property transferred." Significant for our purposes section 13643 provides that: "A transfer conforming to Section 13641 and made with the intention that it take effect in possession or enjoyment at or after the death of the transferor is a transfer subject to this part."

The issue arises from the following circumstances. Edwina Butler (decedent) died on May 7, 1976. In 1964 decedent owned a parcel of real property in El Monte, Los Angeles County, then valued at $168,500. On December 30, 1964, she transferred 45.73 percent of her interest in the property to an *inter vivos* trust, reserving to herself a life estate in that fractional interest, with the remainder at her death to her "then living issue." Simultaneously she transferred this reserved life estate in equal portions to respondents, her two daughters, in exchange for a commitment from each daughter to pay to her $150 per month for her lifetime. In addition to the conveyance in trust, decedent transferred outright to each daughter an undivided 2.135 percent interest, aggregating 4.27 percent in the property. These conveyances totalled 50 percent of decedent's interest in the property. On January 28, 1965, an identical series of transfers took place, thereby divesting decedent of her entire record ownership in the property.

The parties stipulated to the principal facts relevant to the creation of the trusts, including the valuation of the various transfers. The total value of all transfers was $168,500. The remainder interests transferred to the trusts were reported as gifts and both federal and state gift tax returns were filed and the taxes thereon were assessed and paid at the time of transfers.

The parties further stipulated that the transfers of the reserved life estates and the undivided 8.54 percent of the property were made in exchange for the daughters' promises to make the monthly annuity payments. The amount and present value of the annuities were computed using the applicable federal estate and gift tax regulations. (26 C.F.R. §§ 20.2031-7 (1958), 25.2512-5 (1960).) By the time of decedent's death, her daughters had paid to her $76,800 by way of the annuities.

The parties also agreed that the various transactions served a dual purpose to (a) provide the decedent with a monthly lifetime income, and (b) assure that the annuity payments made by the daughters were deductible for the daughters' federal income tax purposes. The property

was nonincome producing prior to its sale in 1969, but thereafter the trusts generated a steady income totalling $136,642 during the period 1969-1976. The resulting trust corpus appreciated substantially in value, and at decedent's death the assets of the trusts were appraised at $407,336.

The trusts were irrevocable and the trust declarations gave to the named individual trustee broad powers to "hold, manage, invest and reinvest the Trust Estate." The only condition limiting the trustee's authority was a denial of any power to sell or dispose of the original trust res, the El Monte property, without the unanimous written consent of decedent's then living daughters. Their written consent was obtained before the El Monte property was sold. Thereafter, the trustee voluntarily consulted with decedent's daughters before investing or reinvesting the resulting trust assets. Following the creation of the trusts, decedent took no part in the management of the trust affairs and it was agreed that the active participation of decedent's daughters in the management of the property was "consistent with the decedent's intentions in creating the trust. . . ."

On the basis of the foregoing stipulated facts, the trial court "found" that decedent intended that the transfer take effect "in her daughters' possession and enjoyment immediately as made, and not that such possession and enjoyment be delayed to take effect at or after her death." (The unsigned and unfiled findings of fact and conclusions of law were made a part of the record by order of the Court of Appeal.) Because possession and enjoyment of the property was not deferred until decedent's death, the court concluded that section 13643 did not apply. In support of its foregoing "finding" the trial court made the following observation: "This intention was borne out in practice. From the dates of the transfers to the date of the decedent's death, the trustee managed the trust properties in constant communication with, and according to the desires of, the two daughters. When the El Monte acreage was sold, the proceeds were invested and reinvested at the daughters' direction, with later turnovers and reinvestments as they directed. Property was bought and sold when and as they wished, with money borrowed, improvements made and leases signed as they directed. The trusts' assets as listed on page 3 of the Report of the Inheritance Tax Referee were the final product of those directions. The decedent had no part in any of this and was not consulted with respect to it. Her approval or disapproval was neither sought nor obtained. Title remained in the trustee until the decedent's death."

Section 13642 provides that transfers occurring more than three years before the death of the transferor are deemed not made "in contemplation of death." The trial court applied this section, noting that the life estates were relinquished more than 11 years prior to decedent's death.

Finally, the court held that section 13645, taxing *inter vivos* transfers made for inadequate consideration, was inapplicable because the sales of the life estates were bona fide sales for adequate and full consideration.

The Controller urges the applicability of section 13643, contending that the remainder interests in the trust corpus are includable in decedent's estate because the transfers were intended to take effect in possession and enjoyment at or after decedent's death. Alternatively, he asserts that the remainder interests are taxable as a matter of law under sections 13641 and 13645 because the transfers, made in exchange for promises to pay the annuities, lacked adequate consideration.

The Controller's primary argument, founded on section 13643, is that the trial court erroneously stressed what it believed was decedent's intent rather than "The plain meaning of the trust instruments."

Respondent daughters answer this claim by urging that because section 13643 specifically refers to transfers "made with the intention" that change of possession or enjoyment occur at death, the decedent's state of mind at the time of transfer, and as reflected in subsequent conduct of trustor, trustee, and beneficiaries, is both relevant and controlling.

From what sources do we glean the transferor's "intent" for purposes of section 13643? Our previous decisions have pointed to the answer. As expressed by Justice Shenk for our unanimous court in *Estate of Loewenstein* (1951) 37 Cal.2d 843, 846 [236 P.2d 566], in rejecting extraneous evidence offered to show the intent of the trustor of an *inter vivos* trust: "We are not here construing the language of a statute. We are concerned with *executed instruments dealing with transfers of ownership of property* in order to determine the legal effect for tax purposes." (Italics added; see *Estate of Stevens* (1958) 163 Cal.App.2d 255, 268 [329 P.2d 337].) The pivotal consideration was previously expressed by Justice Peters in *Estate of Hyde* (1949) 92 Cal.App.2d 6, 14 [206 P.2d 420]: "Liability in such cases does not turn upon the inten-

tion of the grantor, but upon the character of the interests created by the transfer." Stated another way, "the character of the interest created by the transfer is controlling, rather than the intention of the transferor, and that beneficial succession is the measure in determining inheritance tax liability." (Cal. Inheritance Tax Practice (Cont.Ed.Bar 1973) § 6.5, p. 132.)

We are greatly aided by our earlier analysis in *Estate of Madison* (1945) 26 Cal.2d 453 [159 P.2d 630]. There, the decedent established for his three children three *inter vivos* trusts. The trusts were to terminate upon the trustor's death and their assets were to be distributed to the beneficiaries. If a beneficiary predeceased the trustor, the corpus was to pass as the beneficiary might appoint by will, lacking which, to the beneficiary's heirs at law by intestate succession. The trusts were irrevocable with full powers of management and control in the trustee. Spendthrift provisions were imposed on each trust. At the time the trusts were established, the trustor confirmed in writing that his transfers were not made in contemplation of death but were made in order to avoid high income taxes and to place his daughters and son in independent and substantially equal positions.

In *Madison*, the trial court found, as a matter of fact, that the transfers were not intended to take effect in possession or enjoyment at or after death. On appeal the heirs contended that such a finding was conclusive if supported by substantial evidence. Justice Traynor speaking for a unanimous court acknowledged that this argument *"may be valid when the transferor's intention is not set forth in a written instrument but must be determined from the surrounding circumstances,* or when there is an attempt to tax an otherwise nontaxable transfer by proof of a parol agreement inconsistent with the terms of the instrument of transfer. [Citations.] *In this case, however, decedent's intention was clearly set forth in the trust instruments. . . . No question as to the construction of the trust instrument is presented.* The issue is simply whether the transfer intended and made is a transfer covered by the statute. The construction of a statute and its applicability to a given situation are matters of law to be determined by the court. [Citations.]" (*Estate of Madison, supra,* 26 Cal.2d 453, 456, italics added.)

In *Madison*, we held that the decedent "tied up the property with so many strings, which could not be loosened until his death, that the

transfer may be regarded as having been intended to take effect in possession or enjoyment at his death within the meaning of the statute" (26 Cal.2d at p. 457), and concluded that the trusts were taxable under the predecessor section to section 13643 because they were intended to take effect in possession and enjoyment at or after death.

Faithful to the rule of *Loewenstein* and *Madison*, we look to the executed trust instruments to determine the effect of the transfers.

Respondent daughters stress two circumstances favorable to their position. Under the trust declarations decedent retained neither interest nor title in the trusts following her transfer of the trust property. As beneficiaries they took a fully active role in the management of the property following the establishment of the trusts, in contrast to the decedent who refrained from any such participation. ■ However, as we noted in *Madison*, the retention by the trustor of some interest, power, or title, is not determinative. (*Madison, supra*, at p. 457; *Estate of Hyde, supra*, 92 Cal.App.2d at p. 21.) Following *Madison*, and as recently noted, the relevant and critical question is whether a significant *change of possession and enjoyment* takes place at the time of the transferor's death. (*Estate of Elsman* (1977) 74 Cal.App.3d 721, 727 [141 Cal.Rptr. 657]; *Estate of Crowell* (1976) 56 Cal.App.3d 564 [128 Cal.Rptr. 613].)

Respondents attempt to distinguish *Madison* on the ground that in the present case the property was not "tied up with strings" because there were no spendthrift provisions limiting their access to the property, and only title to the property passed at decedent's death. They describe the conditions of the trusts not as "strings" but as a "gossamer thread" arguing that the sole purpose of the trusts was to provide the daughters with income tax advantages, rather than deferment of their possession.

Our examination of the trust declarations does not permit us to accept this characterization of the instruments. We think there were "strings" not "threads." The trusts vested in the trustee *full* rights of management and control in the property, subject only to the one condition that the trustee obtain the daughters' consent before initially selling the real property comprising the trusts' original corpus. Although the trustee consulted with the daughters regarding their wishes _

in the management of the trusts' assets, he was not obligated to do so. If necessary, he would have been legally required during the life of the trusts to prevent the daughters from attempting any effective disposition of the trusts' assets. He could not have permitted the daughters to waste any portion of the trusts to the harm of potential distributees.

Moreover, we find significant the fact that, as previously noted, the trust instruments directed that at decedent's death, the assets would be distributed to her "then living issue." Neither daughter would have had a right to dispose of the trusts' assets either by testamentary disposition or otherwise, to the detriment of "the...lawful issue" of decedent "then living" at the time of decedent's death. Such issue would on the trustor's death be entitled, the trusts then terminating, to their, or her, proportionate distributive share in the trusts' corpus. Until the decedent's death, it was unknown who the successor owner or owners would be.

■ Thus, in reality, until decedent's death the daughters were not entitled freely to manage the trusts' assets, nor could they effectively bequeath their interests in the trusts. Furthermore, the trust instruments permitted the trustee to distribute only income but not assets of the trusts. The entire corpus was retained in the trusts subject to all their terms until the trustor's death.

In *Madison* we said, using a descriptive phrase from a Connecticut case, "'the death of the settlor broke the shackles of the trustee's management of the trust and gave the son the right to use the principal as his own property....'" (26 Cal.2d at p. 464, quoting *Bridgeport City Trust Co.* v. *McLaughlin*, 2 Prentice-Hall Inheritance and Transfer Tax Service, p. 1025, Conn. section.) Similarly, in the matter before us, prior to the trustee's death the property was not the daughters' to do with as they wished.

■ The applicable principle has been recognized by commentators. Thus, "if the degree of possession or enjoyment of the beneficiaries is increased at or after death or if there is an accession to possession by reason of death, the transfer is taxable in its entirety even though *nothing* passed from *decedent* to beneficiaries at death." (11 Marshall, Cal. Practice, State and Local Taxation (1969) § 468, p. 380, italics in original; see Barry, *The Inheritance Tax Affidavit of California* (1956) 7 Hastings L.J. 237, 251.) Such was the case here.

Respondent's reliance on our opinion in *Estate of Thurston* (1950) 36 Cal.2d 207 [223 P.2d 12], is not persuasive. In *Thurston,* the father conveyed two parcels of real property to his children, reserving a life estate in each. Gift taxes were paid on the transfer of the remainder interests. One year later the father relinquished his life estate in one parcel for adequate monetary consideration. Four years later, on the father's death, the Controller sought to tax the original transfer of both parcels of property. We concluded that the transfer of only that parcel of property in which a life estate had been reserved and not relinquished at the time of death was taxable. The *Thurston* transfer which was followed by a sale of the life estate was not taxable because the interests of the transferees were not affected by the death of the transferor.

*Thurston* is distinguishable. Unlike *Madison,* in *Thurston* "the gifts ... were not in trust and the trustor placed no shackles on the property [in which the life estate was also transferred] that could not be and were not removed before his death. His children were the absolute owners of the realty for more than three years before his death and could do with it what they wished." (36 Cal.2d at pp. 213-214.) Here, despite the fact that the *life estates* were transferred for consideration simultaneously with the transfer of the property to the trusts, the rights of the daughters in the property were limited by the terms of the trusts during the duration thereof.

Our conclusion is unaffected by the fact that the transactions involving (a) the establishment of the trusts, and (b) the exchange of the annuity payments for the reserved life estates were not simultaneous. As the parties stipulated, although the transactions were interdependent, they served two distinct purposes, namely, assuring the mother a lifetime income and the daughters a tax advantage. In order to obtain the latter it was necessary, for technical reasons, first to establish the trusts with reserved life estates which could then be sold.

■ In summary, we conclude that the shift of the trusts' assets to the control of the beneficiaries upon decedent's death constituted a taxable transfer under sections 13641 and 13643. At the death of their mother, the trust "shackles" broken, respondents became entitled for the first time to the unrestricted, untrammeled possession and enjoyment of the property.

Because we conclude that the *inter vivos* transfers were taxable under section 13643, we need not consider the Controller's additional argument that they were also taxable under section 13645.

The judgment is reversed.

Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Manuel, J., and Newman, J., concurred.

Respondents' petition for a rehearing was denied August 27, 1980.